**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **ATEN INTERNATIONAL CO. LTD. and** | § | |
| **ATEN TECHNOLOGY, INC.,** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | **CASE NO.  2:08 CV 253** |
| **vs.** | § | **PATENT CASE** |
| | § | |
| **EMINE TECHNOLOGY CO., LTD.,** | § | |
| **BELKIN INTERNATIONAL, INC., and** | § | |
| **BEKIN, INC.** | § | |
| | | |
| **Defendants** | | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Emine Technology Co.'s ("Emine") motion to transfer venue (Docket No. 15); Belkin International and Belkin Inc.'s (collectively "Belkin") motion to transfer venue (2:06-cv-296, Docket No. 79); Emine's Motion for Costs (Docket No. 16); Emine's motion to dismiss (Docket No. 72); ATEN International and ATEN Technology's (collectively "ATEN") motion to compel (Docket No. 92).   After review and for the reasons set forth below, the Court **DENIES** Emine's motion to dismiss, **DENIES** Emine's motion for costs, **GRANTS** ATEN's motion to compel, **GRANTS** Belkin's motion to transfer venue to the Central District of California, and **DENIES** Emine's motion to transfer venue as moot.

**BACKGROUND**

*Procedural History*

On July 21, 2006 ATEN International filed an action (2:06-cv-296, "ATEN I") against Belkin in this Court alleging infringement of U.S. Patent No. 7,035,112 (the "'112 patent").  Subsequently,

1

ATEN International filed a related action with the United States International Trade Commission ("ITC").  Additionally, on January 3, 2007, ATEN filed a complaint in the Northern District of California (the "California action") against Emine and several other defendants alleging infringement of the '112 patent.  ATEN I and the California action were stayed while the ITC action was pending. The ITC action was completed on June 25, 2008.  Following the ITC action, ATEN International filed an infringement action against Emine (2:08-cv-253, "ATEN II") in the Eastern District of Texas alleging infringement of the '112 patent.  ATEN also voluntary dismissed the California action on June 24, 2008.  On September 10, 2008, Emine filed a motion to transfer venue to the Northern District of California in ATEN II ("Emine's motion").  ATEN International then amended its complaint in ATEN II on October 1, 2008 adding ATEN Technology as a co-plaintiff and accusing Emine and Belkin of infringing U.S. Patent No. 6,564,275 (the "'275 patent").  ATEN Technology was also joined as a co-plaintiff in ATEN I on October 9, 2008.

Following these amendments, on October 17, 2008, ATEN filed an unopposed motion to consolidate ATEN I with ATEN II.[1]  Belkin then moved to transfer ATEN I to the Central District of California on February 23, 2009 ("Belkin's motion").  On March 19, 2009, ATEN I and ATEN II were consolidated.

### The Parties

ATEN International is organized under the laws of Taiwan with its principal place of business in Taipei, Taiwan.  ATEN Technology is incorporated in California with its principal place of business in Irvine, California (located within the Central District of California).  ATEN Technology is a U.S. subsidiary of ATEN International.  Emine is a supplier of accused products to

---

[1] Emine originally opposed the motion but withdrew its opposition at the hearing.

2

Belkin.  Emine is organized under Taiwanese law and has its principal place of business in Taipei, Taiwan.  Both Belkin entities are incorporated in Delaware and share a principal place of business in Compton, California.

## EMINE'S MOTION TO DISMISS

### Personal Jurisdiction

Emine moves to dismiss all claims against it for lack of personal jurisdiction.  *See* FED. R. CIV. P. 12(b)(2).  In a patent case, personal jurisdiction intimately relates to patent law, and Federal Circuit law governs the issue.  *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003).  If the parties have not conducted jurisdictional discovery, a plaintiff only needs to make a prima facie showing that the defendant is subject to personal jurisdiction, and the pleadings and affidavits are to be construed in the light most favorable to the plaintiff.  *Id.*  Further, courts will "resolve in [the party seeking jurisdiction's] favor, all conflicts between the facts contained in the parties' affidavits and other documentation."  *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000).[2]  A court can exercise personal jurisdiction over an out-of-state defendant if the forum state's long-arm statute permits jurisdiction without violating federal due process as delineated in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945); *LSI Industries Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1371 (Fed. Cir. 2000); and *3D Systems, Inc. v. Aarotech Laboratories, Inc.*, 160 F.3d 1373, 1376-77 (Fed. Cir. 1998).

"The Texas long-arm statute reaches 'as far as the federal constitutional requirements of due

---

[2] The Court is unaware of a Federal Circuit case expressly addressing how a district court should proceed when the factual allegations of the party seeking jurisdiction are controverted.  However, the Federal Circuit has held that with regard to procedural matters that are not unique to patent issues, courts shall apply the law of the particular regional circuit court where appeals from the district court would normally lie.  *See Lab. Corp. of Am. Holdings v. Chiron Corp.*, 384 F.3d 1326, 1330 (Fed. Cir. 2004).  Accordingly, the Court will apply the rule of the Fifth Circuit.

process will allow.'" *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002) (quoting *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991)). Thus, the analysis of Texas's long-arm statute collapses into the federal due-process inquiry. Due process requires an out-of-state defendant have minimum contacts with the forum such that maintaining the suit does not offend traditional notions of fair play and substantial justice. *Int'l Shoe*, 326 U.S. at 316.

Rule 12(b)(2) allows a court to dismiss a case where the court does not have personal jurisdiction over the defendant. FED. R. CIV. P. 12(b)(2). Once a movant challenges a court's jurisdiction over him, the party asserting jurisdiction bears the burden to show the movant has minimum contacts with the forum state to support jurisdiction over the movant. *Pieczenik v. Dyax Corp.*, 265 F.3d 1329, 1334 (Fed. Cir. 2001). If the party asserting jurisdiction makes such a showing, the movant bears the burden to prove the exercise of jurisdiction would be constitutionally unreasonable. *Akro Corp. v. Luker*, 45 F.3d 1541, 1546 (Fed. Cir. 1995).

In this case, ATEN alleges that jurisdiction is proper under a stream of commerce theory. "The forum does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980). In *Asahi Metal Industry Co. v. Superior Court*, the Supreme Court reiterated that the stream of commerce theory provides a valid basis for finding minimum contacts. *See* 480 U.S. 102, 112 (1987). However, the Court split as to the exact requirements of applying the theory. *See id.* at 112, 117. Four Justices on the Court adopted the view that a defendant must both place a product in the stream of commerce and take some action to

4

purposefully direct that product toward the forum state. *See id.* at 112. The other four Justices adopted the view that a showing of additional action aside from placing the product in the stream of commerce was not necessary. *See id.* at 117.

The Federal Circuit applied the stream of commerce theory in *Beverly Hills Fan Co. v. Royal Sovereign Corp. See* 21 F.3d 1558, 1566 (Fed.Cir.1994). The Federal Circuit emphasized that "'if the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the [defendants] to serve, directly or indirectly, the market for its product . . . , it is not unreasonable to subject it to suit.'" *Id.* (quoting *World-Wide Volkswagen*, 444 U.S. at 297). However, instead of adopting one of the two versions of the stream of commerce theory laid out by the Supreme Court in *Asahi* the Federal Circuit stated, "We need not join in this debate here, since we find that, under either version of the stream of commerce theory, plaintiff made the required jurisdictional showing." *Id.*; *see also Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1321 (Fed. Cir. 2005) (declining to resolve the *Asahi* split).

In support of its motion, Emine avers that it does not advertise or solicit business in the state of Texas and has never engaged in business in Texas. ATEN's uncontested jurisdictional evidence shows that Michael Kao, Emine's president, founded Kaiwei Technology Corporation ("KTC") for the purpose of selling Emine's accused products to Belkin in the United States. Once the products are sold to Belkin and shipped to the United States, they are marketed and sold across the country using Belkin's brand name, including in Texas. Further, ATEN's evidence suggests that Emine has marketed its accused products to other U.S. companies who then retail the products across the U.S. using their own brand names. ATEN has shown several specific instances where the accused products, admittedly manufactured by Emine, are consistently available at retail stores in Texas. The

evidence leads to a very strong conclusion that Emine knew or should have known that its products consistently are marketed and sold in Texas.

Emine responds that ATEN has not made a prima facie showing that Emine has purposefully placed its products into the stream of commerce. Specifically, Emine makes several arguments that ATEN has not presented any direct evidence of Emine's specific intent to direct its products to Texas. Emine offers Kao's declaration as evidence that Emine's products are delivered to a shipping company in Taiwan, shipped to its customers using free-on-board (FOB) shipping terms, and that Emine has no knowledge of the final destination of any of its products. *See* Declaration of Michael Kao, Docket No. 72-12 at ¶¶ 4-5.

The Court again finds it unnecessary to resolve the *Asahi* split in light of the parties' evidence. *See GSK Tech., Inc., v. Schneider Elec., S.A.*, 6:06-cv-361, 2007 WL 788343 at *2 (E.D. Tex. March 14, 2007) (Davis, J.) (finding that evidence of sale of defendant's products into a nation-wide distribution network along with evidence that the products were available in Texas amounted to a prima facie showing of purposeful entry into the Texas stream of commerce). "Within the United States, the State of Texas has the second largest population of any state and three of the ten most populated cities." *Id.* Thus, ATEN's evidence that Emine continuously sells its products to a U.S. nationwide retailer is a strong indication that it intends to direct its products nationwide.

The contractual shipping arrangement that Emine has with its customers is irrelevant. As Emine's cited cases suggest, FOB is a contractual term that shifts the risk of loss from seller to buyer at a particular point in time. *See MEMC Elecs. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1374 n.3 (Fed. Cir. 2005). The relevant inquiry is whether Emine purposefully directs its products toward the Texas market and not whether it retains legal title to the products in

the event of loss.  *See Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 471-72 (5th Cir. 2006) ("[An] F.O.B. term does not prevent a court from exercising personal jurisdiction over a non-resident defendant where other factors, such as the quantity and regularity of shipments, suggest that jurisdiction is proper.").  Thus, in light of resolving the controverted factual issues in favor of the party seeking jurisdiction, ATEN has made a prima facie showing that Emine placed its products into the stream of commerce with knowledge and an intention that they be sold in Texas.  *See Asahi*, 480 U.S. at 117 (noting that jurisdiction is proper when the flow of products into the forum is "regular and anticipated" and more than "unpredictable currents or eddies").

Even if a defendant has minimum contacts with the forum, personal jurisdiction over the defendant must not offend traditional notions of fair play and substantial justice.  *Int'l Shoe*, 326 U.S. at 316.  Determining whether personal jurisdiction offends traditional notions of fair play and substantial justice involves balancing 1) the burden on the defendant; 2) the interests of the forum state; 3) the plaintiff's interest in obtaining relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversies; and 5) the interest of the states in furthering their social policies.  *Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 429 (Fed. Cir. 1996).  Cases where personal jurisdiction offends traditional notions of fair play and substantial justice "are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum."  *Beverly Hills Fan*, 21 F.3d at 1568 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

Applying the *Viam* factors to the facts in this case does not suggest that exercising jurisdiction over Emine would offend traditional notions of fair play and substantial justice.  Emine

argues that this case would be more easily tried in California. It does not provide evidence that it would be substantially burdened by having to defend this case in Texas over and above the general burdens of litigating in a foreign country. It is well recognized that modern communication and transportation have made defending a lawsuit in a foreign tribunal less burdensome. *See World-Wide Volkswagen*, 444 U.S. at 294. The State of Texas has a significant interest in preventing patent infringement within its borders. *See Beverly Hills Fan*, 21 F.3d at 1568 ("[The forum state] has an interest in discouraging injuries that occur within the state."). Further, Texas has an interest in furthering commerce and scientific development, especially within its technology sector, which is promoted by patent laws.

Ultimately, this is not one of the rare cases where exercising personal jurisdiction would offend traditional notions of fair play and substantial justice. The State of Texas's interests are not so attenuated that they are clearly outweighed by any burden Emine would suffer by having to defend this case in Texas, rather than some other state. Additionally, Emine's arguments concerning these factors are more properly made in a motion to transfer venue. Simply because it would be more convenient for Emine to try this lawsuit in California does not make it unconstitutionally unfair for the lawsuit to be litigated in Texas. Therefore, exercising personal jurisdiction over Emine does not offend traditional notions of fair play and substantial justice. Emine's motion to dismiss for lack of personal jurisdiction is denied.

### *Improper Venue*

Emine next moves for dismissal for improper venue. *See* FED. R. CIV. P. 12(b)(3). Once a defendant raises a 12(b)(3) motion to dismiss for improper venue, the burden of sustaining venue lies with the plaintiff. *Laserdynamics Inc. v. Acer Am. Corp.*, 209 F.R.D. 388, 390 (S.D. Tex. 2002).

If there is no evidentiary hearing, a plaintiff may carry its burden by presenting facts, taken as true, that establish venue. *Id.* Courts will accept uncontroverted facts in a plaintiff's pleadings as true and will resolve any conflicts in the plaintiff's favor. *Id.*

In a patent case, venue is proper "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). "[A] defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c); *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1580 (Fed. Cir. 1990). A corporation is deemed to reside within a judicial district located in a multi-district state like Texas if "its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate state." 28 U.S.C. § 1391(c).

As has been discussed, Emine's placement of its products into the stream of commerce with its intention that those products be sold around the U.S. subjects it to personal jurisdiction in Texas. Specifically, ATEN submits uncontradicted affidavit evidence that Emine's products can be purchased in numerous well-known retailers within the Eastern District of Texas. *See* Cadenhead Declaration, Docket No. 20-2 at ¶¶ 2-4. As the accused products can be purchased in numerous locations within this district, sufficient contacts exist in the Eastern District of Texas to subject Emine to venue here under § 1400(b). Emine's motion to dismiss for improper venue is denied.

### *Service of Process*

Emine next moves to dismiss for improper service of process. *See* Fed. R. Civ. P. 12(b)(5) The Federal Rule of Civil Procedure specify that "a domestic or foreign corporation . . . must be served in the manner prescribed by Rule 4(e)(1) for serving an individual . . . ." Fed. R. Civ. P.

4(h)(1)(A).  "[A]n individual . . . may be served in a judicial district of the United States by following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located . . . ."  FED. R. CIV. P. 4(e)(1).

> Section 17.044(b) of the Texas Civil Practice and Remedies Code provides that [t]he secretary of state is an agent for service of process on a nonresident who engages in business in this state, but does not maintain a regular place of business in this state or a designated agent for service of process, in any proceeding that arises out of the business done in this state and to which the nonresident is a party.

TEX. CIV. PRAC. & REM. CODE § 17.044(b).  Further, a non-resident does business in Texas if it "commits a tort in whole or in part in [Texas] . . . ."  *See id.* at § 17.042(2).  Since patent infringement is a tort, the sale of Emine's infringing products in Texas is sufficient evidence that Emine was "doing business" under the Texas service statute, and thus sufficient evidence to meet the service provisions of Federal Rule of Civil Procedure 4(h)(1)(A).  *See Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1280 (Fed. Cir. 2005) (finding that the sale of infringing product within the forum constituted "tortious injury" within the meaning of the forum's long-arm statute).  Thus, service on the Texas Secretary of State was a proper method, and Emine's motion to dismissed based upon improper service is denied.

## EMINE'S MOTION FOR COSTS

Emine moves for costs and attorneys' fees incurred during prosecution of the voluntarily dismissed California action under Federal Rule of Civil Procedure 41(d).  Rule 41(d) provides

> [i]f a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court: 1) may order the plaintiff to pay all or part of the costs of that previous action; and 2) may stay the proceedings until the plaintiff has complied.

FED. R. CIV. P. 41(d).  The award of costs is at the Court's discretion.  *See Hacket v. Proctor &*

10

*Gamble Co.*, No. 06-cv-2272, 2008 WL 538444 at *3 (S.D. Cal. February 27, 2008) (citing *Westlands Water Dist. v. United States*, 100 F.3d 94, 97 (9th. Cir. 1996)).  While a showing of bad faith is not required for the Court to impose costs, good faith may be a factor in the Court's decision not to impose costs.  *See Prest v. Jermstad*, 250 F.R.D. 506, 507-508 (S.D. Cal. 2008) (declining to impose cost for voluntary dismissal on the eve of trial for the purposes of including a key expert witness upon refiling); *c.f. Henry v. Allstate Ins. Co.*, 07-1738, 2007 WL 2287817 at *6 (E.D. La. August 8, 2007) (granting costs pursuant to Rule 41(d) noting that the plaintiffs violated a local rule in dismissing a prior similar action).

As noted above, the California action was initiated against Emine and several other defendants shortly after ATEN filed its ITC action.  Three weeks after the California action was filed, all parties in the California action filed a joint motion to stay that action pending the resolution of the ITC proceedings.  During the pendency of the ITC action, ATEN settled with all other defendants in the California action except Emine.

ATEN explains that the California action was dismissed in good faith for three reasons. First, the settled defendants in the California action were based in California and had created the only direct ties with California (considering that Emine Technology was a Taiwanese Corporation).  Second, by the time the ITC action was complete ATEN had substantially similar litigation pending in the Eastern District of Texas (ATEN I).  Finally, ATEN explains that ATEN I was further along in the litigation process than the California action as no discovery was taken in the California action, no hearings were held, and no court appearances had ever occurred.  Emine does not contradict any of ATEN's evidence or even attempt to rebut ATEN's explanation of good faith.  Accordingly, ATEN's voluntary dismissal of the California action was in good faith and in the interest of judicial economy,

11

and the Court declines to exercise its discretion to impose costs under Rule 41(d). Emine's motion for costs is denied.

### ATEN'S MOTION TO COMPEL INTERROGATORY RESPONSES

On December 19, 2008, ATEN served its first set of interrogatories on Emine. Emine responded to the interrogatories by submitting irrelevant and boilerplate objections and no substantive information. ATEN now moves to compel responses to the December 19 interrogatories.

Emine does not deny that it failed to provide substantive answers to any of ATEN's interrogatories. Rather, Emine argues that it is excused from providing discovery responses because the Court has not entered a protective order or ruled on Emine's pending motions to dismiss or transfer venue. Neither of these excuses have merit. The local rules provide specifically that "a party is not excused from responding to discovery because there are pending motions to dismiss, to remand, or change venue." Local Rule CV-26(a) (entitled "No Excuses"). Additionally, Emine has never moved for a specific protective order relating to any of ATEN's interrogatories and does not do so now. Finally, Patent Rule 2-2 provides that documents or information may be limited to outside counsel and marked "confidential" regardless of whether the Court has entered a protective order. Emine has not provided any valid reason for failing to respond to ATEN's discovery request. Accordingly, ATEN's motion to compel is granted, and Emine is **ORDERED** to meaningfully respond to ATEN's December 19, 2008 interrogatories within 30 days from the date of this order.

### EMINE AND BELKIN'S MOTION TO TRANSFER VENUE

At the time ATEN I and ATEN II were consolidated, both Emine's and Belkin's motions to transfer venue were still pending. Since the consolidation, Emine and Belkin have both joined in the other's respective motion. Thus, Belkin and Emine (collectively "Defendants") now move to

transfer to either the Northern or Central District of California.

***Applicable law***

Defendants argue that they are entitled to transfer under 28 U.S.C. § 1404(a). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." As always, a district court has broad discretion in deciding whether to order a transfer. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*In re Volkswagen II*"). The first inquiry when analyzing a case's eligibility for 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

Once that threshold inquiry is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009). The private factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re TS Tech*, 551 F.3d at 1319. The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re TS Tech*, 551 F.3d at 1319.

The Plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen II*, 545 F.3d at 314-15. Rather, the plaintiff's choice of venue contributes to the defendant's burden in proving that the transferee venue is "clearly more convenient" than the transferor venue. *In re Volkswagen II*, 545 F.3d at 315; *In re TS Tech*, 551 F.3d at 1319. Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 314-15.

### Jurisdiction

The parties do not contest that this action "could have been brought" in both the Northern and Central Districts of California. Thus, the Court assumes that the threshold inquiry has been satisfied.

### The Relative Ease of Access to Sources of Proof

Despite technological advances that certainly lighten the relative inconvenience of transporting large amounts of documents across the country, this factor is still a part of the transfer analysis. *In re Volkswagen II*, 545 F.3d at 316. Therefore, courts have analyzed this factor in light of the fiction that voluminous documents must be transported from their physical location (supposing that electronically stored documents are, in fact, physical) to the trial venue. *See In re Volkswagen II*, 545 F.3d at 316. Thus, almost invariably, this factor will turn upon which party will most probably have the greater volume of documents relevant to the litigation and their presumed physical location in relation to the transferee and transferor venues. *See, e.g.*, *In re Volkswagen II*, 545 F.3d at 314-15; *Jackson v. Intel Corp.*, 2:08-cv-154, 2009 WL 749305 at *2 (E.D. Tex. March 19, 2009) (Ward, J.) (analyizing the volume and location of parties documentary evidence); *Robles v. USA Truck, Inc.*, L-08-122, 2009 WL 677835 at *5 (S.D. Tex. Mar 12, 2009) (same).

14

Emine alleges that almost all major sources of proof are located in either California or Taiwan. Additionally, Emine alleges that there are numerous unique and relevant physical exhibits that ATEN's counsel is in possession of and storing in a facility in California.[3] Additionally, Emine argues that Kaiwei Technology Corporation ("KTC"), which serves as Emine's customer service branch in the United States and is incorporated and located in California, has substantial evidence relevant to this suit. Emine asserts that documents related to KTC's operations are similarly located in California.

ATEN responds by arguing that many relevant documents have already been exchanged during the ITC action. In reference to the unique physical exhibits, ATEN argues that their location is irrelevant because ATEN is willing to transport the documents to Texas and that Defendants have had an opportunity to take numerous photographs of the exhibits throughout the ITC action. However, simply because ATEN is "willing" to transport various physical exhibits to Texas is irrelevant to the issue of whether it is more convenient.

ATEN does not contest that there are numerous potentially relevant documents located in California. ATEN also concedes, though substantial document exchange has taken place because of the ITC action, that there are still relevant documents that are being produced by the parties. Significantly, ATEN does not identify any documents that are located closer to Texas than California.

Finally, ATEN suggests that there are no documents that cannot be produced electronically. However, as mentioned above, whether documents may be produced electronically is no longer

---

[3] Specifically, Belkin claims that there are 21 "banker's boxes" full of unique physical exhibits used during the ITC action.

relevant in the convenience analysis.  Therefore, as the weight of physical and documentary evidence is located within California, this factor favors transfer.

### *The Availability of Compulsory Process to Secure the Attendance of Witnesses*

This factor will weigh more heavily in favor of transfer when more third-party witnesses reside within the transferee venue.  *See In re Volkswagen II*, 545 F.3d at 316.  The factor will weigh the heaviest in favor of transfer when a transferee venue is said to have "absolute subpoena power."  *In re Volkswagen II*, 545 F.3d at 316.  "Absolute subpoena power" is simply the concept that all relevant and material third-party witnesses reside within the subpoena power of a particular court.  *See In re Volkswagen II*, 545 F.3d at 316; *Miller v. Longview Psychiatric Hosp., L.L.C.*, 2:08-CV-42, 2009 WL 748094 at *3 (E.D. Tex. March 19, 2009) (Ward, J.).

Emine and Belkin have shown (by providing the parties' initial disclosures) that most witnesses relevant to this case are located in California and Asia.  However, there is not a single California venue with "absolute subpoena power" mainly because both ATEN International and Emine are based in Taiwan.  On the other hand, ATEN identifies several Belkin employees involved in the design of some of accused products that reside in New York.  ATEN also identifies two of Belkin's experts that reside in Missouri and Texas respectively.  Again, the parties' evidence is clear that there are a substantial number of potentially relevant witnesses who reside in California, many who live within the Central and Northern districts.  As a result, both the Central and Northern Districts of California clearly have a distinct advantage in securing the attendance of any unwilling witnesses.  This factor weighs in favor of transfer.

### *The Cost of Attendance for Willing Witnesses*

This factor is analyzed giving broad "consideration [to] the parties and witnesses in all claims

and controversies properly joined in a proceeding." *In re Volkswagen I*, 371 F.3d at 204.  Further, regardless of the actual likelihood of a particular witness testifying at trial, the relative materiality of witnesses' testimony is irrelevant to this inquiry.  *See In re Genentech*, ___ F.3d ___, 2009 WL 1425474 at *4 (Fed. Cir. May 22, 2009) ("Requiring a defendant to show that a potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary.").  Thus, all potential material and relevant witnesses must be taken into account for the transfer analysis, irrespective of their centrality to the issues raised in a case.

The Fifth Circuit has adopted a "100 mile rule" to assist with analysis of this factor.  *See In re Volkswagen I*, 371 F.3d at 204-205.  "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* at 205.  When applying the "100 mile rule" the threshold question is whether the transferor and transferee venues are more than 100 miles apart.  *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320.  If so, then a court determines the respective distances between the residences (or workplaces) of all the identified material and relevant witnesses and the transferor and transferee venues.  *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320.  The "100 mile rule" favors transfer (with differing degrees) if the transferee venue is a shorter average distance away from witnesses than the transferor venue.  *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320.

Here, Emine has alleged that numerous witnesses reside in California or Asia.  Since California is clearly more than 100 miles away from the Eastern District of Texas, the 100 mile rule

applies.  It would clearly be more convenient for witnesses residing in California to attend trial within that state than to travel to Texas.  Emine has only identified one expert witness that resides in Texas.  As with unwilling witnesses, California would clearly be a more convenient venue than Texas for the more than thirty identified potential witnesses that reside there.

However, the "100 mile rule" should not be rigidly applied.  *See In re Genentech*, ___ F.3d ___, 2009 WL 1425474 at *4.  When a particular witness will be required to travel "a significant distance no matter where they testify," then that witness is discounted for purposes of the "100 mile rule" analysis.  *In re Genentech*, ___ F.3d ___, 2009 WL at 1425474 *4, *6 (discounting European witnesses and documents transported from Washington D.C. in the convenience analysis when reviewing a denial of transfer from Texas to California).  In this case, travel from Taiwan to either California or Texas is clearly a significant distance.  However, even discounting all Asian witnesses from the 100 mile rule analysis, California is still a more convenient venue for the majority of the identified witnesses involved in this action.  As a result, this factor favors transfer.

### *Other Practical Problems*

Practical problems include those that are rationally based on judicial economy.  *In re Volkswagen of Am., Inc.*, ___ F.3d ___, 2009 WL 1425475 at *3 (Fed. Cir. May 22, 2009) ("*In re Volkswagen III*").  Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer.  *In re Volkswagen III,* ___ F.3d ___, 2009 1425475 WL at *2.  Since ATEN I and II were recently consolidated and the parties do not allege that there are any other currently pending cases involving the same parties or patents, there is no longer a danger of duplicitive suits proceeding in multiple venues.  Additionally, ATEN urges that transferring this case to California would create unnecessary

18

procedural and scheduling problems, but fails to particularly identify any of those potential "issues" or how they might affect the parties.  Thus, this factor is neutral.

### The Administrative Difficulties Flowing from Court Congestion

The speed with which a case can come to trial and be resolved is a factor in the transfer analysis. *In re Genentech*, ___ F.3d ___, 2009 WL 1425474 at *8.   The parties' evidence relates that the median time to trial is 21.3 months in the Central District of California and 18 months in the Eastern District of Texas.  Therefore, this factor weighs slightly against transfer.

### The Local Interest in Having Localized Interests Decided at Home

The Fifth Circuit has explained that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation."  *In re Volkswagen I*, 371 F.3d at 206.  Thus, this factor analyzes the "factual connection" that a case has with both the transferee and transferor venues.  *See In re Volkswagen I*, 371 F.3d at 206.  Generally, local interests that "could apply virtually to any judicial district or division in the United States" are disregarded in favor of particularized local interests.  *In re Volkswagen II*, 545 F.3d at 318 (in a products liability suit, disregarding local interest of citizens who used the widely-sold product within the transferor venue); *In re TS Tech*, 551 F.3d at 1321.

ATEN has not identified a single particularized local interest in the Eastern District of Texas.  As in *Volkswagen I* and *II*, the mere fact that an accused product is available in this district is not a particularized interest that weighs against transfer.  Emine identifies California as the principal place of business of both ATEN Technology and Belkin.   This gives the California districts a particularized local interest in this suit no matter the outcome of the case. Further, it is undisputed that the closest business relations that Emine has in the United States is with corporations based in

California.  Since California is clearly the "center of gravity" with respect to the witnesses and parties to this case, this factor weighs in favor of transfer.

***The Familiarity of the Forum with the Law that Will Govern the Case***

The parties do not assert that either the California districts or the Eastern District of Texas has any particular advantage with regard to familiarity with the law governing this litigation.  As a result, this factor is neutral.

***Avoidance of Unnecessary Problems of Conflict of Laws***

Likewise, the parties have not identified any issues regarding conflicts of laws in this litigation.  Thus, this factor is neutral.

***Conclusion***

In sum, the private and public factors weigh heavily in favor of transfer.  The only factor weighing against tr ansfer relates to the probable speed in which this case may proceed to trial.  Though this factor may play an important role in the appropriate case, it may not unilaterally outweigh the majority of remaining factors favoring transfer.  *In re Genentech*, ___ F.3d ___, 2009 WL 1425474 at *8 ("[When] several relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors.")  Therefore, transfer to California is appropriate.

As noted above, Defendants move to transfer to either the Northern or Central District of California.  Because the majority of documents and witnesses located in California reside within the Central District, transfer to that venue would be more convenient for the parties and witnesses.

Accordingly, Belkin's motion to transfer to the Central District of California is granted[4] and Emine's motion to transfer to the Northern District of California is denied as moot.

## CONCLUSION

For the aforementioned reasons, Emine's motion to dismiss is **DENIED**; Emine's motion for costs is **DENIED**; ATEN's motion to compel is **GRANTED** and Emine is **ORDERED** to meaningfully respond to ATEN's December 19, 2008 interrogatories within 30 days from the date of this order; Belkin's motion to transfer venue to the Central District of California is **GRANTED**; and as a result, Emine's motion to transfer venue is **DENIED** as moot.

**So ORDERED and SIGNED this 25th day of June, 2009.**



**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**

---

[4] As part of its response to Belkin's motion, ATEN notes that Belkin filed its motion to transfer nearly 13 months after initiation of ATEN I excluding the period that ATEN I was stayed pending the ITC action. However, Emine filed its motion to transfer to the Northern District of California shortly after ATEN II was initiated. The motions contain nearly identical arguments, and the documents and witnesses involved in the case have not changed by virtue of Belkin's late filing. While it is true that motions to transfer must be made with "reasonable promptness," ATEN was on notice of a timely motion to transfer in September 2008 when Emine filed its motion. *See Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989); *N2 Consulting, LLC v. Engineered Fastener Co.*, No. 3-02-0308-BD, 2002 WL 31246770 at *1 (N. D. Tex.). Even in light of Belkin's flagrant delay in filing its motion to transfer, justice would be better served given the procedural history of this case by transferring it to the Central District of California because that venue would be the most convenient for the parties and witnesses. Parties are warned that this is a result of the unique circumstances presented in this case and that, generally, late-filed motions to transfer are looked upon with extreme disfavor.