Robert W. Dickerson (State Bar No. 89367)
Yasser M. El-Gamal (State Bar No. 189047)
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017-4844
Telephone: 213-629-2020
Facsimile: 213-612-2499
E-mail: rdickerson@orrick.com
E-mail: ymel-gamal@orrick.com

*Attorneys for Belkin International, Inc. and Belkin, Inc.*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| ATEN INTERNATIONAL CO., LTD. and ATEN TECHNOLOGY, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>EMINE TECHNOLOGY CO., LTD., BELKIN INTERNATIONAL, INC., and BELKIN, INC.<br><br>Defendants.<br><br>Consolidated with:<br><br>ATEN INTERNATIONAL CO., LTD., et al.<br><br>v.<br><br>BELKIN INTERNATIONAL, INC., et al. | No. SACV09-843 AG (MLGx)<br><br>**BELKIN'S SUR-REPLY REGARDING ATEN'S MOTION FOR PROTECTIVE ORDER REGARDING MR. DEZMELYK**<br><br>Date: February 8, 2010<br>Time: 10:00 a.m.<br>Court: 10D<br>Judge: Hon. Andrew J. Guilford |

**BELKIN SUR-REPLY REGARDING MR. DEZMELYK**  **CASE NO. SACV09-843 AG**
OHS West:260811163.3

ATEN's motion for a protective order regarding Mr. Dezmelyk can be resolved by answering one question: is there an "objectively reasonable" concern that Mr. Dezmelyk will "advertently or inadvertently" use ATEN's decade-old, publicly-accessible circuit schematics and specifications "for a purpose other than related to this litigation (*e.g.*, for competitive decision making, for developing [his] own products or technologies, or to misappropriate competitor trade secrets)." Protective Order, ¶¶ 8(c) and (d). As the party seeking to bar Mr. Dezmelyk's access to these materials, ATEN has the burden of showing that the answer to this question is yes. ATEN has failed to sustain its burden, and ATEN's motion should accordingly be denied.

In its First Amended Complaint, ATEN held itself out to be "a leading Keyboard-Video-Mouse ("KVM") switch manufacturer." *See* First Amended Complaint filed October 1, 2008 at ¶1 [Doc. No. 38]. Mr. Dezmelyk expressly stated that neither he nor his company, LCS, is involved or compete in the KVM industry and that neither he nor his company worked on KVM products:

> 11. My company, LCS, is involved in the input device industry. We are not involved in the KVM industry, and in no way compete in the KVM industry.
>
> 12. LCS has no current customers who are involved in the KVM industry.
>
> 13. Some of the companies identified on my curriculum vitae as having been LCS customers are involved in the KVM industry (or have in the past been involved in that industry), but neither I nor LCS ever worked with them on any KVM products.

*June 9, 2009 Declaration of Robert Dezmelyk Concerning ATEN's Motion for Protective Order*, ¶¶ 6-9 [Doc. No. 113-2] ("*Dezmelyk Decl.* dated 6/09/09"). Yet

BELKIN SUR-REPLY REGARDING MR. DEZMELYK      - 1 -      CASE NO. SACV09-843 AG
OHS West:260811163.3

ATEN's Reply Brief contends that Mr. Dezmelyk is in direct competition with ATEN:

> The confidential information that Belkin seeks to disclose to Mr. Dezmelyk concerns KVM and USB products and technology sold in the same markets in which Mr. Dezmelyk's company, LCS, directly competes with ATEN.

*ATEN Reply,* pp. 1-2. ATEN provides absolutely no support for this contention. Nowhere does ATEN identify even a single product or project that Mr. Dezmelyk or LCS has been involved in that has ever competed or was even slated to compete with ATEN. ATEN's attempt to characterize Mr. Dezmelyk and his company LCS as being in direct competition or for that matter any competition with ATEN is nothing more than an attempt to create an issue where there is none. ATEN contends that "Belkin could and should have selected someone who is not active in the relevant market." *ATEN Reply,* pp. 1-2. Yet that is exactly who Belkin has selected. It stands un-refuted that neither Mr. Dezmelyk nor LCS is involved or compete in the KVM industry and that neither he nor his company worked on KVM products.[1]

Thus, at bottom, ATEN is a KVM company and Mr. Dezmelyk/LCS are not involved nor have they been involved in the KVM industry. They are not in competition and ATEN has not and cannot show otherwise.[2]

---

[1] ATEN's contentions regarding "USB technology" are also misplaced in that none of the subject documents for which expert review is sought relates to USB products. While Mr. Yang notes in his declaration that one of the eighty-one (81) prior art ATEN products listed in **Exhibit B** [Doc No. 113-4] to the *Dezmelyk Decl.* dated 6/09/09 includes a USB interface (June 18, 2009 Declaration of Sampson Yang (*Yang Reply Decl.)),* ¶4); this product (CS-102U) was inadvertently included in **Exhibit B** as one of the ATEN prior art devices for expert review. A corrected **Exhibit B** removing this product from the list is attached hereto.

[2] All of the cases cited on page 3 of ATEN's Reply Brief relate to disclosures to experts in direct competition with the disclosing party. The fact that a consultant has done work for a direct competitor, however, does not mean that there is a sufficient risk of inadvertent disclosure. *Streck, Inc. v. Research & Diagnostic Systems, Inc.,* 250 F.R.D. 426, 430 (D. Neb. 2008)(allowing disclosure to a consultant that had provided consulting services to a direct competitor of the

In support of its Reply Brief, ATEN attaches the declaration of Mr. Sampson Yang, ATEN's chief executive officer. Mr. Yang first contends the ATEN circuit schematics and specifications Belkin seeks to disclose to Mr. Dezmelyk are commercially valuable, and then asserts – without any supporting rationale whatsoever – that Mr. Dezmelyk would likely improperly use what he finds in such diagrams and specifications when consulting with companies in the future. *See*, *Yang Reply Decl.* dated 6/18/09, ¶¶ 3, 6. **Mr. Yang, however, fails to address the critical fact that the information contained in the ATEN circuit schematics and specifications Mr. Dezmelyk will review can be reverse engineered from products long on the market.**

As Mr. Dezmelyk attests:

> 6. My company purchased a KVM switch manufactured by ATEN in 1998, and I have examined it to determine the circuit features incorporated therein. Because I did not have the circuit design specifications or schematics for this KVM switch in my possession, my examination took a non-trivial amount of time. I had to reverse engineer the circuit structure of the switch from my analyses of the individual switch components and their connections to one another.

---

(continued…)

disclosing party), *distinguishing BASF Corp. v. United States*, 321 F.Supp.2d 1373, 1379 (Ct. Int'l Trade 2004); and *Wang Laboratories, Inc. v. CFR Associates, Inc.* 125 F.R.D. 10, 13 (D. Mass. 1989. This is especially so, if the consulting was done outside the area relevant to the suit. *Id.* Moreover, "a party cannot rely solely upon conclusory statements, but must present evidence of specific damage likely to result." *Id.*, citing *BASF Corp.*, 321 F. Supp. At 1379-81. Here, ATEN has not provided any such evidence. There is no showing that Mr. Dezmelyk nor LCS are or have been in competition with ATEN and ATEN does not refute that the ATEN prior art products at issue have been publicly available for approximately 10 years or more and amenable to being reversed engineered.

> 7. Based on my experience, I am certain that I could examine all of the ATEN switch products listed in Exhibit B (if I were able to find them still for sale) and determine what circuit features those products had.

*Dezmelyk Decl. r*, ¶¶ 6-9. **Neither Mr. Yang's declaration nor ATEN's Reply Brief make any attempt to controvert these statements of Mr. Dezmelyk.**[3] Instead, ATEN somewhat sarcastically suggests that if Mr. Dezmelyk can reverse engineer ATEN's old products, he should go ahead and do so. *See*, *ATEN Reply*, pp. 4-5. ATEN misses the point.

As noted, the question here is whether there is an "objectively reasonable" concern that Mr. Dezmelyk will use confidential information obtained from ATEN to the detriment of ATEN. To answer this question, the Court must consider not only the risk that Mr. Dezmelyk will violate the terms of the Protective Order at some point in the future, but also the true proprietary value of the information at stake. This consideration is straightforward. Any confidentiality that still resides in circuit schematics and specifications for decade-old products that can incontrovertibly be reverse engineered is necessarily dated and of low value. Nor does any of the speculation offered by ATEN create a rational likelihood that Mr. Dezmelyk will somehow violate the Protective Order he has subscribed to in order to misuse information he can otherwise obtain through reverse engineering. Finally, there is no dispute that a costly and time consuming burden will be

---

[3] Citing to ¶ 3 of the *Yang Reply Decl.*, ATEN suggests that Mr. Dezmelyk is incorrect in stating that the circuit schematics and specifications at issue here are publicly available "through inspection of the products themselves." *ATEN Reply*, p. 4. ATEN has twisted Mr. Yang's words. All that Mr. Yang actually says (without explaining why) is that ATEN's "circuit design drawings, schematics and specifications contain proprietary and commercially valuable information . . . , and ATEN has **maintained the confidentiality of such documents, which are not publicly available**." *Yang Reply Decl.*, ¶ 3. The fact that ATEN may have maintained the confidentiality of its documents containing circuit schematics and specifications is irrelevant to ATEN's motion. What is relevant, and fatal to ATEN's Motion, is that Mr. Yang **does not dispute** that ATEN's products can be reverse engineered such that the information in the documents is publicly accessible.

imposed on Belkin if Mr. Dezmelyk is forced to reverse engineer over eighty (80) of ATEN's products (assuming Belkin can still find them), or Belkin is forced to find another person to do this work. Mr. Dezmelyk has been providing expert consultation to Belkin in this matter, and is therefore up to speed on the issues and background relating to this review. When all of these factors are weighed together, the "objectively reasonable" conclusion is that the risk, if indeed there is any, of detriment to ATEN if Mr. Dezmelyk is permitted to review ATEN's decade-old circuit schematics and specifications is minimal.

Mr. Dezmelyk is not in competition with ATEN. Moreover, it is undisputed that all of the circuit schematics and specifications that ATEN contends are so confidential relate to prior art products that ATEN has been selling to the public for 10 years or more and can be readily reverse-engineered. Accordingly, ATEN's motion should be denied.

Dated:   January 19, 2010            Respectfully submitted,

                                     ROBERT W. DICKERSON
                                     YASSER M. EL-GAMAL


                                         /s/ *Yasser El-Gamal*
                                     _____
                                         YASSER EL-GAMAL
                                     Attorneys for *Belkin International, Inc.*
                                            *and Belkin, Inc.*

**BELKIN SUR-REPLY REGARDING MR. DEZMELYK**     - 5 -     **CASE NO. SACV09-843 AG**
OHS West:260811163.3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BELKIN SUR-REPLY REGARDING MR. DEZMELYK**　　　　　　　　　　　　　　　　　　　**CASE NO. SACV09-843 AG**
OHS West:260811163.3