ORIGINAL

FILED

Robert W. Dickerson (State Bar No. 89367)
rdickerson@orrick.com
Yasser M. El-Gamal (State Bar No. 189047)
ymel-gamal@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street
Suite 3200
Los Angeles, CA 90017
Telephone: +1-213-629-2020
Facsimile: +1-213-612-2499

Attorneys for Defendants and Counterclaimants
BELKIN INTERNATIONAL, INC. AND BELKIN, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| ATEN INTERNATIONAL CO., LTD. and ATEN TECHNOLOGY, INC., | Case No. SACV 09-00843-AG (MLGx) |
| Plaintiffs, | **BELKIN INTERNATIONAL, INC. AND BELKIN, INC.'S AMENDED ANSWER AND COUNTERCLAIMS RE: PLAINTIFFS' SECOND AMENDED AND SUPPLEMENTAL COMPLAINT** |
| v. | |
| EMINE TECHNOLOGY CO., LTD., BELKIN INTERNATIONAL, INC., and BELKIN, INC., | |
| Defendants. | Honorable Andrew J. Guilford |
| Consolidated with: | |
| ATEN INTERNATIONAL CO., LTD., et al. | Date Transferred: July 22, 2009 |
| Plaintiff, | Discovery Cutoff: Nov. 15, 2010 |
| v. | Pretrial Conference: Jan. 31, 2011 |
| BELKIN INTERNATIONAL, INC., et al, | Trial Date: Feb. 15, 2011 |
| Defendant. | |
| AND RELATED COUNTERCLAIMS | |

DEFENDANTS' AMENDED ANSWER AND COUNTERCLAIMS
TO SECOND AMENDED AND SUPPLEMENTAL *COMPLAINT*

Defendants Belkin International, Inc. and Belkin, Inc. (collectively "Belkin") answer the *Second Amended And Supplemental Complaint* ("*Complaint*") of plaintiffs ATEN International Co., Ltd. and ATEN Technology, Inc. (collectively "ATEN") as follows:

## **PARTIES**

1.     Answering Paragraph 1 of the *Complaint*, Belkin denies ATEN's allegation that ATEN possesses innovative technology, or that any of ATEN's patents are directed to innovations.  Belkin admits that ATEN International Co., Ltd. is listed as the assignee on U.S. Patent No. 6,564,275 ("the '275 patent"), U.S. Patent No. 6,957,287 ("the '287 patent"), U.S. Patent No. 7,035,112 ("the '112 patent"), U.S. Patent No. 7,542,299 ("the '299 patent") and U.S. Patent No. 7,613,854 ("the '854 patent").  Belkin lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 1.

2.     Answering Paragraph 2 of the *Complaint*, Belkin lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

3.     Answering Paragraph 3 of the *Complaint*, Belkin lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.  In further response to Paragraph 3, Belkin avers that Emine is not represented by counsel in this matter, and may no longer be a viable legal entity.  On information and belief, Emine has not made an appearance in this matter in this Court, such that constructive service of the Complaint upon Emine was not effected under Local Rule 15.3

4.     Answering Paragraph 4 of the *Complaint*, Belkin admits that Belkin International, Inc. and Belkin, Inc. are corporations organized under the laws of the state of Delaware.  Belkin admits that it has conducted business and has offered to

sell and has sold products to customers and stores in this judicial district and throughout the State of California. Except as expressly admitted, Belkin denies any remaining allegations in Paragraph 4.

## JURISDICTION AND VENUE

5.    Answering Paragraph 5 of the *Complaint*, Belkin admits that ATEN has brought a patent infringement action arising under the United States Patent Laws, 35 U.S.C. §100 *et seq.* including 35 U.S.C. §271.

6.    Answering Paragraph 6 of the *Complaint*, Belkin admits that this Court has subject matter jurisdiction over this matter under 28 U.S.C. §§1331 and 1338(a).

7.    Answering Paragraph 7 of the *Complaint*, Belkin denies on information and belief that it has committed any act of patent infringement with respect to ATEN's patents, in this judicial district or any other judicial district. Belkin admits that it is subject to personal jurisdiction in the Central District of California. Belkin lacks knowledge or information sufficient to form a belief about the truth of any of the allegations relating to Emine.

8.    Answering Paragraph 8 of the *Complaint*, Belkin denies on information and belief that it has committed any act of patent infringement with respect to ATEN's patents, in this judicial district or any other judicial district. Belkin admits that venue is proper in the Central District of California.

9.    Answering Paragraph 9 of the *Complaint*, Belkin admits that it submitted to the jurisdiction of this Court by virtue of its motion to transfer this action from the Eastern District of Texas to the Central District of California, and that venue is proper in the Central District of California.

10.    Answering Paragraph 10 of the *Complaint*, Belkin denies on information and belief that any of its products infringe any of ATEN's patents.

Belkin admits that it has shipped products into the Central District of California, as well as other judicial districts.

### ATEN'S PATENTS

11.    Answering Paragraph 11 of the *Complaint*, Belkin admits that on its face the '112 patent lists an issue date of April 25, 2006, identifies the patentee as Kevin Chen, and is entitled "AUTOMATIC SWITCH."   Belkin lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 11 of the *Complaint*.  Except as expressly admitted above, Belkin denies each and every remaining allegation of Paragraph 11 of the *Complaint*.

12.    Answering Paragraph 12 of the *Complaint*, Belkin denies that the '112 patent is directed to an invention.  Belkin admits that to its knowledge, only two companies have settled litigation brought against them by ATEN, and have taken "licenses" under the '112 patent, but Belkin denies that such litigation settlements constitute either "acknowledgement" or "appreciation" of the so-called "invention in the '112 patent."  Belkin also denies all other allegations in Paragraph 12 of the *Complaint*.

13.    Answering Paragraph 13 of the *Complaint*, Belkin denies that the '112 patent is valid.  Belkin admits that to its knowledge RATOC Systems Inc. is one of the two companies who have entered into litigation settlements with ATEN.  Belkin lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 13.

14.    Answering Paragraph 14 of the *Complaint*, Belkin denies that the '112 patent is valid.  Belkin admits that to its knowledge JustCom Tech, Inc. is the other of the two companies who have entered into litigation settlements with ATEN. Belkin lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 14.

15.     Answering Paragraph 15 of the *Complaint*, Belkin admits that on its face the '275 patent lists an issue date of May 13, 2003, identifies the patentee as Sun Chung Chen, and is entitled "ELECTRONIC SWITCHING DEVICE FOR A UNIVERSAL SERIAL BUS INTERFACE."     Belkin lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 15 the *Complaint*.

## DEFENDANTS' (ALLEGED) ACTS OF INFRINGEMENT

16.     Answering Paragraph 16 of the *Complaint*, Belkin is informed and believes that the Emine products ATEN accuses of infringing the '112 patent in this action were the same or substantially the same products found not to infringe the '112 patent in International Trade Commission Investigation 337-TA-589, and Belkin therefore denies the allegations as to such Emine products.  Belkin further denies the allegations in Paragraph 16 to the extent the allegations refer to any Emine products accused of infringing either the '112 or the '275 patent, which products were manufactured by Emine for Belkin.  Belkin lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations contained in Paragraph 16.

17.     Answering Paragraph 17 of the *Complaint*, Belkin is informed and believes that the Emine products ATEN accuses of infringing the '112 patent in this action were the same or substantially the same products found not to infringe the '112 patent in International Trade Commission Investigation 337-TA-589, and Belkin therefore denies the allegations as to such Emine products.  Belkin further denies the allegations in Paragraph 17 to the extent the allegations refer to any Emine products accused of infringing either the '112 or the '275 patent, which products were manufactured by Emine for Belkin.  Belkin lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations contained in Paragraph 17.

DEFENDANTS' AMENDED ANSWER AND COUNTERCLAIMS
TO SECOND AMENDED AND SUPPLEMENTAL *COMPLAINT*

18.     Answering Paragraph 18 of the *Complaint*, Belkin is informed and believes that the Emine products ATEN accuses of infringing the '112 patent in this action were the same or substantially the same products found not to infringe the '112 patent in International Trade Commission Investigation 337-TA-589, and Belkin therefore denies the allegations as to such Emine products.  Belkin further denies the allegations in Paragraph 18 to the extent the allegations refer to any Emine products accused of infringing either the '112 or the '275 patent, which products were manufactured by Emine for Belkin.  Belkin also denies that anything set forth in the claims of the '112 and '275 patents is inventive.  Belkin lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations contained in Paragraph 18.

19.     Belkin denies each and every allegation contained in Paragraph 19 of the *Complaint*.

20.     Belkin denies each and every allegation contained in Paragraph 20 of the *Complaint*.

21.     Belkin denies each and every allegation contained in Paragraph 21 of the *Complaint*.

## ATEN'S CLAIM 1

22.     Belkin incorporates its answers to Paragraphs 1-3, 5-7 and 11-18 of the *Complaint* as though fully and completely set forth herein.

23.     Belkin lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 23 of the *Complaint*.

24.     Answering Paragraph 24 of the *Complaint*, Belkin is informed and believes that the Emine products ATEN accuses of infringing the '112 patent in this action were the same or substantially the same products found not to infringe the '112 patent in International Trade Commission Investigation 337-TA-589, and Belkin therefore denies the allegations as to such Emine products.  Belkin further

1  denies the allegations in Paragraph 24 to the extent the allegations refer to any
2  Emine products accused of infringing the '112 patent, which products were
3  manufactured by Emine for Belkin.   Belkin lacks knowledge or information
4  sufficient to form a belief about the truth of any remaining allegations contained in
5  Paragraph 24.

6      25.   Answering Paragraph 25 of the *Complaint*, Belkin is informed and
7  believes that the Emine products ATEN accuses of infringing the '112 patent in this
8  action were the same or substantially the same products found not to infringe the
9  '112 patent in International Trade Commission Investigation 337-TA-589, and
10 Belkin therefore denies the allegations as to such Emine products.  Belkin further
11 denies the allegations in Paragraph 25 to the extent the allegations refer to any
12 Emine products accused of infringing the '112 patent, which products were
13 manufactured by Emine for Belkin.   Belkin lacks knowledge or information
14 sufficient to form a belief about the truth of any remaining allegations contained in
15 Paragraph 25.

16     26.   Answering Paragraph 26 of the *Complaint*, Belkin is informed and
17 believes that the Emine products ATEN accuses of infringing the '112 patent in this
18 action were the same or substantially the same products found not to infringe the
19 '112 patent in International Trade Commission Investigation 337-TA-589, and
20 Belkin therefore denies the allegations as to such Emine products.  Belkin further
21 denies the allegations in Paragraph 26 to the extent the allegations refer to any
22 Emine products accused of infringing the '112 patent, which products were
23 manufactured by Emine for Belkin. Belkin also denies that anything set forth in the
24 claims of the '112 patent  is inventive.  Belkin lacks knowledge or information
25 sufficient to form a belief about the truth of any remaining allegations contained in
26 Paragraph 26.

27
28

DEFENDANTS' AMENDED ANSWER AND COUNTERCLAIMS
TO SECOND AMENDED AND SUPPLEMENTAL *COMPLAINT*

## ATEN'S CLAIM 2

27.  Belkin incorporates the answers to Paragraphs 1-3, 5-7 and 11-18 of the *Complaint* as though fully and completely set forth herein.

28.  Answering Paragraph 28 of the *Complaint*, Belkin is informed and believes that the Emine products ATEN accuses of infringing the '112 patent in this action were the same or substantially the same products found not to infringe the '112 patent in International Trade Commission Investigation 337-TA-589, and Belkin therefore admits, on information and belief, that at least as of the filing date of the *Complaint* Emine would have been aware of the '112 patent.  Belkin lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations in Paragraph 28 of the *Complaint*.

29.  Answering Paragraph 29 of the *Complaint*, Belkin is informed and believes that the Emine products ATEN accuses of infringing the '112 patent in this action were the same or substantially the same products found not to infringe the '112 patent in International Trade Commission Investigation 337-TA-589, and Belkin therefore denies the allegations as to such Emine products.  Belkin further denies the allegations in Paragraph 29 to the extent the allegations refer to any Emine products accused of infringing the '112 patent, which products were manufactured by Emine for Belkin.  Belkin lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations contained in Paragraph 29.

30.  Answering Paragraph 30 of the *Complaint*, Belkin is informed and believes that the Emine products ATEN accuses of infringing the '112 patent in this action were the same or substantially the same products found not to infringe the '112 patent in International Trade Commission Investigation 337-TA-589, and Belkin therefore denies the allegations as to such Emine products.  Belkin further denies the allegations in Paragraph 30 to the extent the allegations refer to any Emine products accused of infringing the '112 patent, which products were

manufactured by Emine for Belkin.   Belkin lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations contained in Paragraph 30.

## ATEN'S CLAIM 3

31.   Belkin incorporates the answers to Paragraphs 1-3, 5-7 and 11-18 of the *Complaint* as though fully and completely set forth herein.

32.   Belkin lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 32 of the *Complaint*.

33.   Answering Paragraph 33 of the *Complaint*, Belkin denies the allegations to the extent the allegations refer to any Emine products accused of infringing the '275 patent, which products were manufactured by Emine for Belkin. Belkin lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations contained in Paragraph 33.

34.   Answering Paragraph 34 of the *Complaint*, Belkin denies the allegations to the extent the allegations refer to any Emine products accused of infringing the '275 patent, which products were manufactured by Emine for Belkin. Belkin lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations contained in Paragraph 34.

35.   Answering Paragraph 35 of the *Complaint*, Belkin denies the allegations to the extent the allegations refer to any Emine products accused of infringing the '275 patent, which products were manufactured by Emine for Belkin. Belkin also denies that anything set forth in the claims of the '275 patent is inventive. Belkin lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations contained in Paragraph 35.

## ATEN'S CLAIM 4

36.   Belkin incorporates the answers to Paragraphs 1-3, 5-7 and 11-18 of the *Complaint* as though fully and completely set forth herein.

DEFENDANTS' AMENDED ANSWER AND COUNTERCLAIMS
TO SECOND AMENDED AND SUPPLEMENTAL *COMPLAINT*

37.    Belkin lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 37 of the *Complaint*.

38.    Answering Paragraph 38 of the *Complaint*, Belkin denies the allegations to the extent the allegations refer to any Emine products accused of infringing the '275 patent, which products were manufactured by Emine for Belkin. Belkin lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations contained in Paragraph 38.

39.    Answering Paragraph 39 of the *Complaint*, Belkin denies the allegations to the extent the allegations refer to any Emine products accused of infringing the '275 patent, which products were manufactured by Emine for Belkin. Belkin lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations contained in Paragraph 39.

## ATEN'S CLAIM 5

40.    Belkin incorporates the answers to Paragraphs 1-21 of the *Complaint* as though fully and completely set forth herein.

41.    Belkin lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 41 of the *Complaint*.

42.    Answering Paragraph 42 of the *Complaint*, Belkin admits that it imports into the United States and sells KVM switch products, including Flip, OmniView, SOHO and PRO3 switches. Belkin denies each and every remaining allegation contained in Paragraph 42 of the *Complaint*.

43.    Answering Paragraph 43 of the *Complaint*, Belkin admits that it has had actual knowledge of the '112 patent  since at least July 21, 2006.

44.    Belkin denies each and every allegation contained in Paragraph 44 of the *Complaint*.

45.    Belkin denies each and every allegation contained in Paragraph 45 of the *Complaint*.

## ATEN'S CLAIM 6

46.    Belkin incorporates the answers to Paragraphs 1-21 of the *Complaint* as though fully and completely set forth herein.

47.    Belkin lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 47 of the *Complaint*.

48.    Answering Paragraph 48 of the *Complaint*, Belkin admits that it imports into the United States and sells KVM switch products, including Flip, OmniView and SOHO switches.   Belkin denies each and every remaining allegation contained in Paragraph 48 of the *Complaint*.

49.    Answering Paragraph 49 of the *Complaint*, Belkin admits that it has had actual knowledge of the '275 patent since at least October 9, 2008.

50.    Belkin denies each and every allegation contained in Paragraph 50 of the *Complaint*.

51.    Belkin denies each and every allegation contained in Paragraph 51 of the *Complaint*.

52.    Belkin denies each and every allegation contained in Paragraph 52 of the *Complaint*.

## ATEN'S CLAIM 7

53.    Belkin incorporates the answers to Paragraphs 1-21 of the *Complaint* as though fully and completely set forth herein.

54.    Answering Paragraph 54 of the *Complaint*, Belkin admits that on its face the '287 patent lists an issue date of October 18, 2005, and is entitled "ASYNCHRONOUS/SYNCHRONOUS KVMP SWITCH FOR CONSOLE AND PERIPHERAL DEVICES."   Belkin also admits that a copy of the '287 patent was attached to the *Complaint* as Exhibit C.   Belkin lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 54 the *Complaint*.

55.   Answering Paragraph 55 of the *Complaint*, Belkin admits that it imports into the United States and sells KVM switch products, including but not limited to F1DP216G, F1DP232G, F1DD102L, F1DD104L, F1DS102J, F1DS104J, F1DS102L and F1DS104L products.   Belkin denies on information and believe each and every remaining allegation contained in Paragraph 55 of the *Complaint*.

56.   Answering Paragraph 56 of the *Complaint*, Belkin admits that it now has knowledge of the '287 patent.

57.   Belkin denies each and every allegation contained in Paragraph 57 of the *Complaint*.

58.   Belkin denies each and every allegation contained in Paragraph 58 of the *Complaint*.

59.   Belkin denies each and every allegation contained in Paragraph 59 of the *Complaint*.

## ATEN'S CLAIM 8

60.   Belkin incorporates the answers to Paragraphs 1-21 of the *Complaint* as though fully and completely set forth herein.

61.   Answering Paragraph 61 of the *Complaint*, Belkin admits that on its face the '854 patent lists an issue date of November 3, 2009, and is entitled "KEYBOARD VIDEO MOUSE (KVM) SWITCH WHEREIN PERIPHERALS HAVING SOURCE COMMUNICATION PROTOCOL ARE ROUTED VIA KVM SWITCH AND CONVERTED TO DESTINATION COMMUNICATION PROTOCOL."   Belkin also admits that a copy of the '854 patent was attached to the *Complaint* as Exhibit D.   Belkin lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 61 the *Complaint*.

62.   Answering Paragraph 62 of the *Complaint*, Belkin admits that it imports into the United States and sells KVM switch products, including but not

1   limited to F1DP216A, F1DP232A and F1DW216C products.   Belkin denies on

2   information and belief each and every remaining allegation contained in Paragraph

3   62 of the *Complaint*.

4          63.    Answering Paragraph 63 of the *Complaint*, Belkin admits that it now

5   has knowledge of the '854 patent.

6          64.    Belkin denies each and every allegation contained in Paragraph 64 of

7   the *Complaint*.

8          65.    Belkin denies each and every allegation contained in Paragraph 65 of

9   the *Complaint*.

10         66.    Belkin denies each and every allegation contained in Paragraph 66 of

11  the *Complaint*.

12                              **ATEN'S CLAIM 9**

13         67.    Belkin incorporates the answers to Paragraphs 1-21 of the *Complaint*

14  as though fully and completely set forth herein.

15         68.    Answering Paragraph 68 of the *Complaint*, Belkin admits that on its

16  face  the  '299  patent  lists  an  issue  date  of  June  2,  2009,  and  is  entitled

17  "KEYBOARD, VIDEO AND MOUSE (KVM) SWITCH."    Belkin also admits

18  that a copy of the '299 patent was attached to the *Complaint* as Exhibit E.  Belkin

19  lacks knowledge or information sufficient to form a belief about the truth of the

20  remaining allegations of Paragraph 68 the *Complaint*.

21         69.    Answering Paragraph 69 of the *Complaint*, Belkin admits that it

22  imports into the United States and sells KVM switch products, including but not

23  limited to Flip, OmniView, SOHO and PRO3 switches.    Belkin denies on

24  information and belief each and every remaining allegation contained in Paragraph

25  69 of the *Complaint*.

26         70.    Answering Paragraph 70 of the *Complaint*, Belkin admits that it now

27  has knowledge of the '299 patent.

28

DEFENDANTS' AMENDED ANSWER AND COUNTERCLAIMS
TO SECOND AMENDED AND SUPPLEMENTAL *COMPLAINT*

71.   Belkin denies each and every allegation contained in Paragraph 71 of the *Complaint*.

72.   Belkin denies each and every allegation contained in Paragraph 72 of the *Complaint*.

73.   Belkin denies each and every allegation contained in Paragraph 73 of the *Complaint*.

## BELKIN'S AFFIRMATIVE DEFENSES

For separate and affirmative defenses, Belkin alleges as follows:

74.   Belkin incorporates here the foregoing admissions, denials, and allegations in Paragraphs 1-73 above.

## FIRST AFFIRMATIVE DEFENSE

75.   On information and belief, the claims of the '112, '275, '287, '854 and '299 patents are invalid for failing to comply with one or more requirements of the patent laws of the United States, including, but not limited to, the conditions for patentability set forth in 35 U.S.C. §§101, 102, 103 and 112.

## SECOND AFFIRMATIVE DEFENSE

76.   On information and belief, Belkin has not infringed, and is not infringing, and has not contributed to or induced, and is not contributing to or inducing, the infringement of the claims of the '112, '275, '287, '854 and '299 patents.

## THIRD AFFIRMATIVE DEFENSE

77.   On information and belief, ATEN is estopped by representations or actions taken during the prosecution of the '112, '275, '287, '854 and '299 patents, which representations and/or actions limit the literal and equivalent scope of the claims of those patents under the doctrines of prosecution disclaimer and prosecution history estoppel.

DEFENDANTS' AMENDED ANSWER AND COUNTERCLAIMS
TO SECOND AMENDED AND SUPPLEMENTAL *COMPLAINT*

## FOURTH AFFIRMATIVE DEFENSE

78.    On information and belief, ATEN's claim for damages, if any, is limited by 35 U.S.C. §287.

## FIFTH AFFIRMATIVE DEFENSE

79.    On information and belief, ATEN is barred in whole or in part from asserting the '275 and '287 patents against Belkin, under the doctrine of laches, or waiver, or both.

## SIXTH AFFIRMATIVE DEFENSE

80.    On information and belief, the '112 patent is unenforceable by reason of inequitable conduct committed during the prosecution of the patent before the United States Patent and Trademark Office ("PTO"). While the scope of such inequitable conduct is not now known in its entirety and with precision, such conduct includes the deliberate withholding of material information from the PTO as described below.

81.    On or about July 8, 2002, the law firm of Jeffer, Mangels, Butler & Mamaro LLP filed U.S. Patent Application No. 10/190,015 (hereinafter "the '112 patent application"), entitled "AUTOMATIC SWITCH" on behalf of Kevin Chen. The '112 patent states on its face that it issued on April 25, 2006 and was assigned to ATEN International Co., Ltd.  On information and belief, Mr. Chen was the Chief Executive Officer of ATEN International Co., Ltd. at the time the '112 patent application was filed and throughout the prosecution thereof.

82.    At all relevant times during the prosecution of the '112 patent application, ATEN International Co., Ltd., Mr. Chen and/or the attorneys and agents acting on their behalf had an uncompromising duty of candor to the PTO, which included the duty to pay appropriate fees to the PTO, the duty to disclose relevant facts to the PTO, including prior art known to ATEN International Co., Ltd., Mr. Chen and/or the attorneys and agents acting on their behalf, and the duty

DEFENDANTS' AMENDED ANSWER AND COUNTERCLAIMS
TO SECOND AMENDED AND SUPPLEMENTAL *COMPLAINT*

1  not to make material misrepresentations of fact to the PTO with respect to the '112

2  patent application.

3    83.    On information and belief, ATEN International Co., Ltd., Mr. Chen

4  and/or the attorneys and agents acting on their behalf failed to pay appropriate fees

5  to the PTO, on occasion paying "small entity" fees even though it was known to

6  them that ATEN International Co., Ltd., as the assignee of the '112 patent

7  application, did not qualify as a "small entity" and therefore should have been

8  paying "large entity" fees.  On information and belief, the failure to pay correct fees

9  was willful, amounting to inequitable conduct sufficient to render the '112 patent

10  unenforceable.

11    84.    On information and belief, ATEN International Co., Ltd., Mr. Chen

12  and/or the attorneys and agents acting on their behalf failed to disclose prior art to

13  the PTO that they knew, or, in view of surrounding facts and circumstances, they

14  should have known to be more relevant than the prior art made of record during the

15  prosecution of the '112 patent application.  This prior art includes, but is not limited

16  to, certain of ATEN International Co., Ltd.'s own KVM switch and cable products

17  and related product literature which constituted prior art as to the '112 patent

18  application.

19    85.    In the now-completed United States International Trade Commission

20  Investigation No. 337-TA-589, *In the Matter of CERTAIN SWITCHES AND*

21  *PRODUCTS CONTAINING SAME* ("the ITC Investigation"), which ATEN

22  International Co., Ltd. initiated against several respondents, including Belkin (and

23  its predecessor companies), and in this action and its predecessor actions, ATEN

24  International Co., Ltd. has taken the position that the asserted claims of the '112

25  patent are sufficiently broad so as to be infringed by KVM switches having cables

26  attached to the bodies of the switches  by thumbscrews.

27    86.    The prior art products of ATEN International Co., Ltd., such as the

28  commercially-marketed CS-12, CS-142, CS-228, CS-428 CS-1004, CS-1008 and

DEFENDANTS' AMENDED ANSWER AND COUNTERCLAIMS
TO SECOND AMENDED AND SUPPLEMENTAL *COMPLAINT*

CS-1016 products, comprise KVM switches that had cables (such as the 2L-1001 and 2L-1701P type KVM cables) attached to the bodies of the switches by thumbscrews. Associated prior art product literature likewise disclosed such switches. This prior art is discussed in detail in the briefing submitted in the ITC Investigation, in the ITC Administrative Law Judge's Preliminary Determination, and in the International Trade Commission's Decision, and is also discussed in detail in Belkin's Preliminary Invalidity Contentions in predecessor Case No. SACV 09-00843-AG (MLGx).

87.    In the ITC Investigation, both the Administrative Law Judge and the International Trade Commission on review found that if the asserted claims of the '112 patent were construed as broadly as ATEN International Co., Ltd. there argued, the asserted claims would have been invalid over various prior art, including ATEN International Co., Ltd.'s own prior art products and literature identified in Paragraph 86 above. These prior art ATEN products and literature were therefore both non-cumulative and highly material to the '112 patent application. The Examiner handling the '112 patent application would have wanted to know about the prior art ATEN products and literature before deciding whether to allow the claims of the '112 patent.

88.    After years of rejections on a host of grounds, in a February 25, 2005 Office Action the Examiner again rejected Claim 4 (which would eventually issue as Claim 1) of the '112 patent, along with other claims. In response, ATEN International Co., Ltd., Mr. Chen and the attorneys and agents acting on their behalf submitted an Amendment to the '112 patent application on May 25, 2005, which Amendment added a new limitation to Claim 4 (issued as Claim 1) directed to "having a plurality of connector plugs, wherein each connector plug in the plurality of connector plugs for one of the cables in the plurality of cables are matched a respective connector plug in another one of the cables in the plurality of cables." ATEN International Co., Ltd., Mr. Chen and the attorneys and agents acting on

1    their behalf then asked the Examiner to "withdraw . . . the rejection based on the
2    amendments." However, the prior art ATEN cables, such as the 2L-1701P 3-in-1
3    KVM cable sold by ATEN International Co., Ltd., fell within the scope of this
4    amendment, and was therefore both non-cumulative and highly material to the '112
5    patent application. The Examiner handling the '112 patent application would have
6    wanted to know about the prior art ATEN 2L-1701P 3-in-1 KVM cable before
7    deciding whether to allow Claim 4 (now Claim 1) of the application.

8          89.    Third-party prior art products, for example, the StarTech SV211K
9    KVM switch and cables, the Linksys ProConnect KVM switch and cables, and the
10   Avocent Outlook ES Series KVM switch and cables, also incorporate KVM
11   switches that have cables attached to the switch bodies by thumbscrews. Given
12   ATEN International Co., Ltd.'s proposed claim constructions and allegations of
13   infringement, these other prior art products and their associated literature
14   incorporate features falling within the scope of the '112 claims asserted by ATEN
15   against Belkin, and are therefore material, non-cumulative and more relevant to the
16   patentability of the claims of the '112 patent than the prior art cited by or to the
17   PTO during the prosecution of the '112 patent application. The Examiner handling
18   the '112 patent application would have wanted to know about this third-party prior
19   art before deciding whether to allow the claims of the '112 patent.

20         90.    ATEN International Co., Ltd., Mr. Chen and the attorneys and agents
21   acting on their behalf during the prosecution of the '112 patent application
22   indisputably knew of ATEN's own prior art KVM switches and cables and related
23   literature described in Paragraphs 86 and 88 above, and knew these ATEN KVM
24   switches and cables and related literature were highly material. On information and
25   belief, ATEN International Co., Ltd., Mr. Chen and the attorneys and agents acting
26   on their behalf during the prosecution of the '112 patent application further knew
27   about the third-party prior art switches and cables and related literature described in
28   Paragraph 89 above, and knew these third-party KVM switches and cables and

DEFENDANTS' AMENDED ANSWER AND COUNTERCLAIMS
TO SECOND AMENDED AND SUPPLEMENTAL *COMPLAINT*

related literature were highly material. Nevertheless, ATEN International Co., Ltd., Mr. Chen and/or the attorneys and agents acting on their behalf during the prosecution of the '112 patent application elected not to disclose any of this prior art to the PTO, and in fact withheld this prior art from the PTO, during the prosecution of the '112 patent.

91.     Indeed, during the prosecution of the '112 patent application, ATEN International Co., Ltd., Mr. Chen and the attorneys and agents acting on their behalf filed a Petition to Make Special, in which they represented to the PTO that they had undertaken a rigorous search for prior art, and had disclosed the most relevant prior art of which they were aware. None of the ATEN prior art products and literature identified in Paragraphs 86 and 88 above, and none of the and third-party prior art products and literature identified in Paragraph 89 above, were disclosed in this Petition to Make Special, even though ATEN International Co., Ltd., Mr. Chen and the attorneys and agents acting on their behalf had knowledge of these prior art products and literature.

92.     Although the Administrative Law Judge in the ITC Investigation did not find the '112 patent unenforceable, Belkin is informed and believes that the failure on the part of ATEN International Co., Ltd., Mr. Chen and/or the attorneys and agents acting on their behalf to disclose pertinent prior art meets the "intent" standard for patent unenforceability, especially when coupled with the clear materiality of the withheld prior art. Despite indisputable knowledge that the ATEN and third-party prior art products and literature identified in Paragraphs 86, 88 and 89 above disclosed allegedly novel limitations attributed to the '112 claims, ATEN International Co., Ltd., Mr. Chen and the attorneys and agents acting on their behalf withheld those prior art products and literature from the PTO, in order to secure allowance of the claims. This is strong circumstantial evidence that the withholding on the part of ATEN International Co., Ltd., Mr. Chen and the attorneys and agents acting on their behalf was intentional.

93.     Additional evidence to be discovered in this action and adduced at trial, including, on information and belief, documents and testimony regarding a variety of ATEN products that were sold prior to July 8, 2001, containing various of the switch components disclosed and claimed in the '112 patent, will further convincingly establish that the failure on the part of ATEN International Co., Ltd., Mr. Chen and/or the attorneys and agents acting on their behalf to disclose the more relevant prior art, some of which consisted of ATEN's own prior art products and literature, was intentional.

94.     On information and belief, ATEN International Co., Ltd., Mr. Chen and/or the attorneys and agents acting on their behalf thus fully intended to deceive and mislead the PTO into issuing the '112 patent.  This intentional deception in withholding prior art, when viewed in the context of the highly material nature of the withheld prior art, constitutes inequitable conduct and renders the '112 patent unenforceable.

## SEVENTH AFFIRMATIVE DEFENSE

95.     On information and belief, the '275 patent is unenforceable by reason of inequitable conduct committed during the prosecution of the patent before the PTO.  While the scope of such inequitable conduct is not now known in its entirety and with precision, such conduct includes the deliberate withholding of material information from the PTO described below.

96.     On or about February 28, 2000, the law firm of Bacon & Thomas, PLLC filed U.S. Patent Application No. 09/514,579 (hereinafter "the '275 patent application"), entitled "AN ELECTRONIC SWITCHING DEVICE FOR A UNIVERSAL SERIAL BUS INTERFACE," on behalf of Sun Chung Chen.  The '275 patent states on its face that it issued on May 13, 2003 and was assigned to ATEN International Co., Ltd.  The '275 patent asserts priority from a Taiwanese patent application filed May 28, 1999.  On information and belief, Mr. Chen was

the Chief Executive Officer of ATEN International Co., Ltd. at the time the '275 patent application was filed and throughout the prosecution thereof.

97.    ATEN International Co., Ltd., Mr. Chen and/or their attorneys and agents failed to disclose material prior art and material information in connection with the prosecution of the '275 patent application.  This failure to disclose was a violation of Mr. Chen's, ATEN International Co., Ltd.'s and/or their attorneys' duties of candor and good faith.  37 C.F.R. §1.56.  On information and belief, this omission was done with the intent to deceive or mislead the PTO.

98.    When the '275 patent application was filed, it contained fourteen claims, one of which was independent and thirteen of which were dependent (either directly or indirectly) on Claim 1.  These fourteen claims are recited below:

> 1.    An electronic switching device for a universal serial bus (USB) interface, comprising a trigger signal generator, a control signal generator, and a connector, wherein:
>
> the trigger signal generator having an output to be connected with an input of the control signal generator, and having a switch to output a trigger signal to the control signal generator when a user enables the switch;
>
> the control signal generator having an input to be connected with an output of the trigger signal generator, and having an output to be connected with an input of the connector, for receiving the trigger signal outputted from the trigger signal generator, and processing the trigger signal, then outputting a control signal to the connector;
>
> the connector having an input to be connected with each universal serial bus (USB interface of at least two electronic devices, and having an output to be connected with a universal serial bus (USB( interface of another electronic device, when the connector receives the control signal outputted from the control signal generator, the connector will connect related universal serial bus (USB) interfaces according to the control signal.
>
> 2.    An electronic switching device for a universal serial bus (USB) interface according to claim 1, wherein the trigger signal generator comprising a resistor, a capacitor, and a switch, the resistor and the capacitor are serially connected between a power supply and a ground, one end of the switch is connected to the ground, the other end of the switch is connected to where the resistor and

the capacitor are connected, enabling the switch to generate a pulse signal to be used as the trigger signal.

3.    An electronic switching device for a universal serial bus (USB) interface according to claim 1, wherein the control signal generator comprising a D FLIP-FLOP, having a clock signal input terminal to be used as the input of the control signal generator, and having a reverse data output terminal to be connected with a data input terminal thereof, a positive data output terminal thereof is used as the output of the control signal generator.

4.    An electronic switching device for a universal serial bus (USB) interface according to claim 1, wherein the connector comprising a multiplexor, an input and an output of the multiplexor are connected respectively with each universal serial bus (USB) interface of different electronic devices, and a selecting signal input terminal thereof is connected with the output of the control signal generator.

5.    An electronic switching device for a universal serial bus (USB) interface according to claim 1, wherein the control signal generator comprising at least two D FLIP-FLOP's, a clock signal input terminal of the first D FLIP-FLOP is connected with the output of the trigger signal generator, while a reverse data output terminal is connected with its data input terminal; a clock signal input terminal of the second D FLIP-FLOP is connected with the reverse data output terminal of the first D FLIP-FLOP, while a reverse data output terminal of the second D FLIP-FLOP is connected with its data input terminal and so on; and the positive data output terminals of all the D FLIP-FLOP's are used as the control signals for the connector.

6.    An electronic switching device for a universal serial bus (USB) interface according to claim 1, wherein the connector comprising at least two identical multiplexors to be parallely connected for decreasing the internal resistance in the connector.

7.    An electronic switching device for a universal serial bus (USB) interface according to claim 1, wherein a delay signal generator is provided between the trigger signal generator and the connector, having an input to be connected with the output of the trigger signal generator, and having an output to be connected with tan enable terminal of the connector.

8.    An electronic switching device for a universal serial bus (USB) interface according to claim 7, wherein the delay signal generator comprising two resistors, a capacitor and a diode, having its input to be connected with the output of the trigger signal generator, and having

DEFENDANTS' AMENDED ANSWER AND COUNTERCLAIMS
TO SECOND AMENDED AND SUPPLEMENTAL *COMPLAINT*

its output to be connected with the enable terminal of the connector, the first resistor and the capacitor are serially connected between a power supply and a ground, a point where the first resistor and the capacitor are connected is connected with a positive terminal of the diode and the enable terminal of the connector, while a negative terminal of the diode is connected with one end of the second resistor, the other end of the second resistor is the input terminal of the delay signal generator

9. An electronic switching device for a universal serial bus (USB) interface according to claim 1, wherein the control signal generator is connected with a display for showing the current connections of the universal serial bus (USB) interfaces.

10.   An electronic switching device for a universal serial bus (USB) interface according to claim 9, wherein the display comprising light emitting diodes.

11.   An electronic switching device for a universal serial bus (USB) interface according to claim 1, wherein the control signal generator is connected with an enable signal generator so that the connections between different USB interfaces are the same whenever the power supply begins conducting.

12.   An electronic switching device for a universal serial bus (USB) interface according to claim 11, wherein the enable signal generator comprising a resistor and a capacitor, the resistor and the capacitor are serially connected between the power supply and the ground, a point where the resistor and the capacitor are connected is used as an output to be connected with a reset terminal of the control signal generator.

13.   An electronic switching device for a universal serial bus (USB) interface according to claim 1, wherein the power supply used by the electronic switching device for a universal serial bus (USB) interface is the power supply used by the connected universal serial bus (USB) interface

14.   An electronic switching device for a universal serial bus (USB) interface according to claim 1, wherein a diode is connected between the power supply and each USB interface to avoid the reverse current flowing from USB interface to the power supply

99.   On September 4, 2002, during prosecution of the '275 patent application, the Examiner working for the PTO issued an Office Action rejecting Claims 1, 9-11, 13 and 14 under 35 U.S.C. §103 as being unpatentable over the

1  combination of U.S. Patent No. 6,118,496 ("Ho") in view of U.S. Patent No.

2  6,012,103 ("Sartore").   In the September 4, 2002 Office Action, the Examiner

3  stated that Ho taught every limitation of Claim 1 as filed except for the recited USB

4  interfaces.  The Examiner stated that it would have been obvious to one of ordinary

5  skill in the art at the time of the invention to combine Sartore, which taught USB

6  interfaces, with the switching apparatus taught in Ho to arrive at the structure

7  recited in Claim 1.

8      100.   In the same September 4, 2002 Office Action, the Examiner objected

9  to Claims 2-8 and 12 but indicated Claims 2-8 and 12 "would be allowable if

10 rewritten in independent form including all of the limitations of the base claim and

11 any intervening claims."  By so doing, the Examiner was indicating that he was not

12 able to find in the prior art the structure of the "trigger signal generator" recited in

13 original Claim 2.  Similarly, this objection meant that the Examiner was not able to

14 find in the prior art the structure of the "connector" recited in original Claim 4.

15 Finally, the objection meant that the Examiner was not able to find in the prior art

16 the structure for the "enable signal generator" recited in original Claim 12.

17     101.   In response to this Office Action, ATEN International Co., Ltd. and

18 Sun Chung Chen, through their attorneys and agents, did not attempt to argue that

19 the Examiner's rejection under 35 U.S.C. §103 was incorrect.   Instead, ATEN

20 International Co., Ltd., Mr. Chen and their attorneys and agents acquiesced in the

21 Examiner's rejection, and sought to overcome the objection by rewriting Claims 2-

22 8 and 12 in independent form.  The differences between the certain claims as filed

23 and what eventually issued is printed below, with the additions to claims underlined

24 and the deletions shown as being stricken through.

25     102.   The differences between the issued form of Claim 1 of the '275 patent

26 and the corresponding claim as filed are as follows:

27         Issued Claim 1 (filed as Claim 1) An electronic switching
        device   for   a   universal   serial   bus   (USB)   interface,
28

DEFENDANTS' AMENDED ANSWER AND COUNTERCLAIMS
TO SECOND AMENDED AND SUPPLEMENTAL *COMPLAINT*

comprising a trigger signal generator, a control signal generator, and a connector, wherein:

the trigger signal generator ~~having~~ has an output to be connected with an input of the control signal generator, and a switch to output a trigger signal to the control signal generator when a user enables the switch;

the trigger signal generator comprises a resistor, a capacitor, and a switch, the resistor and the capacitor being serially connected between a power supply and a ground one end of the switch being connected to the ground, and the other end of the switch being connected to where the resistor and the capacitor are connected, such that when a user enables the switch, the switch will generate a pulse signal to be used as a trigger signal for outputting to the control signal generator;

the control signal generator ~~having~~ has an input to be connected with an output of the trigger signal generator, and ~~having~~ an ~~ouput~~ output to be connected with an input of the connector, for receiving the trigger signal outputted from the trigger signal generator, ~~and~~ processing the trigger signal, and then outputting a control signal to the connector; and

the connector ~~having~~ has an input to be connected with each universal serial bus (USB) interface of at least two electronic devices, and ~~having~~ an output to be connected with a universal serial bus (USB) interface of another electronic device, such that when the connector receives the control signal outputted from the control signal generator, the connector will connect related universal serial bus (USB) interfaces according to the control signal.

As can be seen, Claim 1 of the '275 patent was allowed by the Examiner because it recited the structure for the claimed "trigger signal generator," namely a specific arrangement of a switch, resistor and capacitor.

103.    The differences between the issued form of Claim 3 of the '275 patent and the corresponding claim as filed are as follows:

Issued Claim 3 (filed as Claim 4)  An electronic switching device for a universal serial bus (USB) interface ~~according to claim 1~~, comprising a trigger signal generator, a control signal generator, and a connector, wherein:

the trigger signal generator has an output to be connected with an input of the control signal generator,

and a switch to output a trigger signal to the control signal generator when a user enables the switch;

the control signal generator has an input to be connected with an output of the trigger signal generator, and an output to be connected with an input of the connector, for receiving the trigger signal outputted from the trigger signal generator, processing the trigger signal, and then outputting a control signal to the connector; and

the connector has an input to be connected with each universal serial bus (USB) interface of at least two electronic devices, and an output to be connected with a universal serial bus (USB) interface of another electronic device, such that when the connector receives the control signal outputted from the control signal generator, the connector will connect related universal serial bus (USB) interfaces according to the control signal, and

the connector ~~comprising~~ comprises a multiplexor, an input and an output of the multiplexor ~~are~~ being connected respectively with each universal serial bus (USB) interface of different electronic devices, and a selecting signal input terminal thereof ~~is~~ being connected with the output of the control signal generator.

As can be seen, Claim 3 of the '275 patent was allowed by the Examiner because it recited the structure for the claimed "connector," namely a multiplexor.

104. The differences between the issued form of Claim 10 of the '275 patent and the corresponding claim as filed are as follows:

Issued Claim 10 (filed as Claim 12)   An electronic switching device for a universal serial bus (USB) interface according to claim 1, comprising a trigger signal generator, a control signal generator, and a connector, wherein:

the trigger signal generator has an output to be connected with an input of the control signal generator, and a switch to output a trigger signal to the control signal generator when a user enables the switch;

the control signal generator has an input to be connected with an output of the trigger signal generator, and an output to be connected with an input of the connector, for receiving the trigger signal outputted from the trigger signal generator, processing the trigger signal and then outputting a control signal to the connector; and

the connector has an input to be connected with each universal serial bus (USB) interface of at least two

DEFENDANTS' AMENDED ANSWER AND COUNTERCLAIMS
TO SECOND AMENDED AND SUPPLEMENTAL *COMPLAINT*

electronic devices, and an output to be connected with a universal serial bus (USB) interface of another electronic device, such that when the connector receives the control signal outputted from the control signal generator, the connector will connect related universal serial bus (USB) interfaces according to the control signal,

the control signal generator is connected with an enable signal generator so that the connections between different USB interfaces are the same whenever the power supply begins conducting; and

the enable signal generator ~~comprising~~ comprises a resistor and a capacitor, the resistor and the capacitor ~~are~~ being serially connected between the power supply and the ground, ~~and~~ a point where the resistor and the capacitor are connected ~~is~~ being used as an output to be connected with a reset terminal of the control signal generator.

As can be seen, Claim 10 of the '275 patent was allowed by the Examiner because it recited the structure for the claimed "enable signal generator," namely a specific arrangement of a resistor and capacitor.

105.   On information and belief, in 1996 or 1997, ATEN offered for sale and/or sold, in the United States, a KVM switch identified with the part number CS-106.  The product was sold as under the ATEN brand name and was offered for sale in the United States and could be found in ATEN's 1996 product catalog:



106.   On information and belief, at approximately the same time, and no later than March 1998, Belkin sold a KVM switch which it identified as the Belkin Omniview AT Style KVM Switch.   Belkin assigned SKU – F1D065 to the Omniview AT Style KVM Switch.   The Belkin Omniview AT Style KVM Switch was manufactured by ATEN International Co., Ltd for Belkin.   On information and belief, the Belkin Omniview AT Style KVM Switch is virtually identical in structure, function and operation to the ATEN CS-106.   Below are photographs of the front and back of the Belkin Omniview AT Style KVM Switch:





107.   The photograph below of a printed circuit board within the Belkin Omniview AT Style KVM Switch establishes that it was manufactured by ATEN, as ATEN placed its name on the board.   In addition, this board has the number code

1    "9737" printed thereon.  On information and belief, the number code "9737" is a

2    date code establishing that this board was manufactured by ATEN in the thirty

3    seventh week of 1997.



18       108.  Because the ATEN CS-106 was sold in the United States in 1996 and

19   the Belkin Omniview AT Style KVM Switch was sold at least as early as March

20   1998, each of these products, both of which were manufactured by ATEN

21   International Co., Ltd, are prior art under 35 U.S.C. §102(b) to the '275 patent.  The

22   ATEN CS-106 and Belkin Omniview AT Style KVM Switch will be referred to

23   herein as the "Belkin Omniview KVM Switch," since this is the actual switch

24   Belkin has been able to locate and photograph.

25       109.  The Belkin Omniview KVM Switch is remarkably similar in structure,

26   function and operation to the switch described and claimed in the '275 patent, and,

27   except for the USB interfaces, discloses every limitation of Claim 1 of the '275

28

DEFENDANTS' AMENDED ANSWER AND COUNTERCLAIMS
TO SECOND AMENDED AND SUPPLEMENTAL *COMPLAINT*

1  patent as filed on February 28, 2000 and issued on May 13, 2003.  Substitution of

2  USB interfaces for other types of interfaces, *e.g.*, HD-15 VGA interfaces, DB-9

3  serial interfaces and DIN-5 AT interfaces, is not patentable, as is demonstrated by

4  the Examiner's refusal to allow Claim 1 over a prior art reference ("Ho") that

5  contained interfaces other than USB interfaces.  Notwithstanding this fact, neither

6  ATEN International Co., Ltd., Mr. Chen nor any of their attorneys disclosed the

7  Belkin Omniview AT Style KVM Switch to the PTO.

8       110.  Referring to the elements of Claim 1, the Belkin Omniview KVM

9  Switch has a "trigger signal generator," indicated by the following photograph:



18      111.  In particular, the Belkin Omniview KVM Switch contained a "switch,"

19  as required by amended Claim 1:



112. The remaining components of the "trigger signal generator" required by Claim 1 of the '275 patent are shown in the following photographs:





The schematic of this structure is depicted below:



- 30 -

1   113.   This schematic demonstrates the fact that the Belkin Omniview KVM

2   Switch has a "trigger signal generator" comprising a resistor, a capacitor, and a

3   switch.   The resistor and the capacitor are serially connected between a power

4   supply and a ground, and one end of a switch is connected to the ground while the

5   other end of the switch is connected to a point where the resistor and the capacitor

6   are connected.

7   114.   The output of the "trigger signal generator" in the Belkin Omniview

8   KVM Switch produces a "trigger signal" and is connected to pin 15 of component

9   labeled as U6 on a printed circuit board within the Belkin Omniview KVM Switch,

10   as seen in the photograph below (circled in red):



20   115.   The component at U6 is almost certainly a microcontroller, because it

21   matches the pin out of a Microchip PIC 16C55, a microcontroller that was widely

22   in use in 1996-1998.[1]   ATEN's infringement contentions served in this action assert

23   that microcontrollers used in Belkin's products comprise a "control signal

24   generator," meaning that microcontrollers fall within ATEN's definition of a

25   control signal generator.

26

27   _____

[1]   It appears that ATEN removed the part numbers from the chip during

28   manufacture of the Belkin Omniview KVM Switch.

116.   The output of the microcontroller, the electronic component ATEN asserts in this action is a "control signal generator," is a control signal (comprised of three bits).   The control signal, along with several other signals, are sent to a "connector" over a ribbon cable:



When the "connector" receives the control signal outputted from the microcontroller, the connector will connect VGA interfaces according to the control signal.

117.   In sum, when the switch recited in Claim 1 of the '275 patent as originally filed (*see*, Paragraph 98 above) is compared to the Belkin Omniview KVM Switch, the only difference between the two is that the switch recited in Claim 1 as originally filed required USB interfaces, whereas the Belkin Omniview KVM Switch has HD-15 VGA interfaces, DB-9 serial interfaces and DIN-5 AT interfaces.   In this regard, the September 4, 2002 Office Action demonstrates that the Examiner – correctly – did not believe substitution of a USB interface for a non-USB interface was patentable.

118.   As discussed above, ATEN International Co., Ltd. and Mr. Chen, through their attorneys and agents, amended Claim 1 from its originally filed form to obtain its allowance by reciting a specific structure for the "trigger signal generator."   The Examiner, in fact, allowed Claim 1 of the '275 patent only after

DEFENDANTS' AMENDED ANSWER AND COUNTERCLAIMS
TO SECOND AMENDED AND SUPPLEMENTAL *COMPLAINT*

1    Claim 1 was amended to recite the specific structure comprising the "trigger signal

2    generator." However, the structure of the "trigger signal generator" in Claim 1 of

3    the '275 patent as allowed was in all relevant respects identical to the "trigger

4    signal generator" present in the prior art Belkin Omniview KVM Switch designed

5    and manufactured for Belkin by ATEN.

6        119.    Thus, when ATEN International Co., Ltd. and Mr. Chen, through

7    their attorneys and agents, amended Claim 1 to obtain its allowance, they knew that

8    the prior art Belkin Omniview KVM Switch contained the "trigger signal

9    generator" the Examiner believed distinguished the claim from the prior art, yet

10   they failed to disclose the Belkin Omniview KVM Switch to the PTO .

11       120.    As further discussed above, the Examiner allowed Claim 3 of the '275

12   patent after the original version of the claim in the '275 patent application (*i.e.*,

13   application Claim 4) was amended to include all the limitations of Claim 1 as

14   originally filed. Because Claim 1 as originally filed was rejected by the Examiner

15   while application Claim 4 was indicated to be allowable if amended to include all

16   the limitations of Claim 1, the only feature of application Claim 4 (*i.e.*, issued

17   Claim 3) the Examiner believed was not in the prior art was the specific structure

18   comprising the "connector," namely a multiplexor.

19       121.    The Belkin Omniview KVM Switch has "input[s] to be connected with

20   each universal serial bus (USB) interface of at least two electronic devices," and

21   also has "an output to be connected with a universal serial bus (USB) interface of

22   another electronic device:"



DEFENDANTS' AMENDED ANSWER AND COUNTERCLAIMS
TO SECOND AMENDED AND SUPPLEMENTAL *COMPLAINT*

23
24
25
26
27
28

1    122.   The control signal from the microcontroller U6 (*see*, Paragraphs 114-

2    116 above) is sent over a ribbon cable to multiplexors  that switch VGA display

3    signals.   Specifically, the control signal output from the microcontroller at U6 is

4    connected to the selection inputs of integrated circuits that are almost certainly

5    multiplexors belonging to the "4051" multiplexor product family.[2]   These three

6    analog multiplexors switch VGA interfaces in the exact same fashion as the

7    multiplexor recited in Claim 3 of the '275 patent as issued switches USB interfaces:

8

9

10

11    

12

13

14

15

16

17    A close-up photograph shows that the three analog multiplexors are at locations

18    U12, U13, and U14 on the printed circuit board ATEN manufactured.   This

19    photograph also demonstrates that the control signals output from the

20    microcontroller (which ATEN asserts is a "control signal generator") are input to

21    the multiplexors, just as is required by Claim 3 of the '275 patent:

22

23

24

25

26

27    [2]    When ATEN manufactured the Belkin OmniView KVM Switch, it removed or

28    obscured the manufacturer's markings on these integrated circuits but the pin outs
      of these chips match the pin out of a CD 4051 8-to-1 multiplexor.

DEFENDANTS' AMENDED ANSWER AND COUNTERCLAIMS
TO SECOND AMENDED AND SUPPLEMENTAL *COMPLAINT*



123.   A schematic of this arrangement is depicted below:



124.   As is seen in this schematic, the Belkin Omniview KVM Switch has a "connector" that comprises a multiplexor, where an input and an output of the multiplexor are respectively connected with each VGA interface of different electronic devices.  The multiplexors in the Belkin Omniview KVM Switch further have a selecting signal input terminal that is connected with the output of the microcontroller.