1   Robert W. Dickerson (State Bar No. 89367)
    rdickerson@orrick.com
2   Yasser M. El-Gamal (State Bar No. 189047)
    ymel-gamal@orrick.com
3   ORRICK, HERRINGTON & SUTCLIFFE LLP
    777 South Figueroa Street
4   Suite 3200
    Los Angeles, CA 90017
5   Telephone: +1-213-629-2020
    Facsimile: +1-213-612-2499
6
    Attorneys for Defendants and Counterclaimants
7   BELKIN INTERNATIONAL, INC. AND BELKIN, INC.

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                  SOUTHERN DIVISION

12

| | |
|---|---|
| 13  ATEN INTERNATIONAL CO., LTD. and ATEN TECHNOLOGY, INC., | Case No. SACV 09-00843-AG (MLGx) |
| 14               Plaintiffs, | **BELKIN INTERNATIONAL, INC. AND BELKIN, INC.'S SUPPLEMENTAL AMENDED ANSWER AND COUNTERCLAIMS RE: PLAINTIFFS' SECOND AMENDED AND SUPPLEMENTAL COMPLAINT** |
| 15          v. | |
| 16  EMINE TECHNOLOGY CO., LTD., BELKIN INTERNATIONAL, INC., and BELKIN, INC., | |
| 17 | |
| 18               Defendants. | Honorable Andrew J. Guilford |
| 19 | |
| 20  Consolidated with: | Date Transferred:  July 22, 2009 |
| 21  ATEN INTERNATIONAL CO., LTD., et al. | Discovery Cutoff:  Nov. 15, 2010 |
| 22               Plaintiff, | Pretrial Conference: Jan. 31, 2011 Trial Date:  Feb. 15, 2011 |
| 23          v. | |
| 24  BELKIN INTERNATIONAL, INC., et al, | |
| 25               Defendant. | |
| 26  AND RELATED COUNTERCLAIMS | |

27

28

BELKIN'S SUPPLEMENTAL AMENDED ANSWER AND COUNTERCLAIMS
TO SECOND AMENDED AND SUPPLEMENTAL *COMPLAINT*

Defendants Belkin International, Inc. and Belkin, Inc. (collectively "Belkin") answer the *Second Amended And Supplemental Complaint* ("*Complaint*") of plaintiffs ATEN International Co., Ltd. and ATEN Technology, Inc. (collectively "ATEN") as follows:

## PARTIES

1.     Answering Paragraph 1 of the *Complaint*, Belkin denies ATEN's allegation that ATEN possesses innovative technology, or that any of ATEN's patents are directed to innovations.  Belkin admits that ATEN International Co., Ltd. is listed as the assignee on U.S. Patent No. 6,564,275 ("the '275 patent"), U.S. Patent No. 6,957,287 ("the '287 patent"), U.S. Patent No. 7,035,112 ("the '112 patent"), U.S. Patent No. 7,542,299 ("the '299 patent") and U.S. Patent No. 7,613,854 ("the '854 patent").  Belkin lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 1.

2.     Answering Paragraph 2 of the *Complaint*, Belkin lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

3.     Answering Paragraph 3 of the *Complaint*, Belkin lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.  In further response to Paragraph 3, Belkin avers that Emine is not represented by counsel in this matter, and may no longer be a viable legal entity. On information and belief, Emine has not made an appearance in this matter in this Court, such that constructive service of the Complaint upon Emine was not effected under Local Rule 15.3

4.     Answering Paragraph 4 of the *Complaint*, Belkin admits that Belkin International, Inc. and Belkin, Inc. are corporations organized under the laws of the state of Delaware.  Belkin admits that it has conducted business and has offered to

sell and has sold products to customers and stores in this judicial district and throughout the State of California. Except as expressly admitted, Belkin denies any remaining allegations in Paragraph 4.

## JURISDICTION AND VENUE

5. Answering Paragraph 5 of the *Complaint*, Belkin admits that ATEN has brought a patent infringement action arising under the United States Patent Laws, 35 U.S.C. §100 *et seq.* including 35 U.S.C. §271.

6. Answering Paragraph 6 of the *Complaint*, Belkin admits that this Court has subject matter jurisdiction over this matter under 28 U.S.C. §§1331 and 1338(a).

7. Answering Paragraph 7 of the *Complaint*, Belkin denies on information and belief that it has committed any act of patent infringement with respect to ATEN's patents, in this judicial district or any other judicial district. Belkin admits that it is subject to personal jurisdiction in the Central District of California. Belkin lacks knowledge or information sufficient to form a belief about the truth of any of the allegations relating to Emine.

8. Answering Paragraph 8 of the *Complaint*, Belkin denies on information and belief that it has committed any act of patent infringement with respect to ATEN's patents, in this judicial district or any other judicial district. Belkin admits that venue is proper in the Central District of California.

9. Answering Paragraph 9 of the *Complaint*, Belkin admits that it submitted to the jurisdiction of this Court by virtue of its motion to transfer this action from the Eastern District of Texas to the Central District of California, and that venue is proper in the Central District of California.

10. Answering Paragraph 10 of the *Complaint*, Belkin denies on information and belief that any of its products infringe any of ATEN's patents.

Belkin admits that it has shipped products into the Central District of California, as well as other judicial districts.

## ATEN'S PATENTS

11. Answering Paragraph 11 of the *Complaint*, Belkin admits that on its face the '112 patent lists an issue date of April 25, 2006, identifies the patentee as Kevin Chen, and is entitled "AUTOMATIC SWITCH." Belkin lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 11 of the *Complaint*. Except as expressly admitted above, Belkin denies each and every remaining allegation of Paragraph 11 of the *Complaint*.

12. Answering Paragraph 12 of the *Complaint*, Belkin denies that the '112 patent is directed to an invention. Belkin admits that to its knowledge, only two companies have settled litigation brought against them by ATEN, and have taken "licenses" under the '112 patent, but Belkin denies that such litigation settlements constitute either "acknowledgement" or "appreciation" of the so-called "invention in the '112 patent." Belkin also denies all other allegations in Paragraph 12 of the *Complaint*.

13. Answering Paragraph 13 of the *Complaint*, Belkin denies that the '112 patent is valid. Belkin admits that to its knowledge RATOC Systems Inc. is one of the two companies who have entered into litigation settlements with ATEN. Belkin lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 13.

14. Answering Paragraph 14 of the *Complaint*, Belkin denies that the '112 patent is valid. Belkin admits that to its knowledge JustCom Tech, Inc. is the other of the two companies who have entered into litigation settlements with ATEN. Belkin lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 14.

BELKIN'S SUPPLEMENTAL AMENDED ANSWER AND COUNTERCLAIMS
TO SECOND AMENDED AND SUPPLEMENTAL *COMPLAINT*

15. Answering Paragraph 15 of the *Complaint*, Belkin admits that on its face the '275 patent lists an issue date of May 13, 2003, identifies the patentee as Sun Chung Chen, and is entitled "ELECTRONIC SWITCHING DEVICE FOR A UNIVERSAL SERIAL BUS INTERFACE."   Belkin lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 15 the *Complaint*.

## DEFENDANTS' (ALLEGED) ACTS OF INFRINGEMENT

16. Answering Paragraph 16 of the *Complaint*, Belkin is informed and believes that the Emine products ATEN accuses of infringing the '112 patent in this action were the same or substantially the same products found not to infringe the '112 patent in International Trade Commission Investigation 337-TA-589, and Belkin therefore denies the allegations as to such Emine products.  Belkin further denies the allegations in Paragraph 16 to the extent the allegations refer to any Emine products accused of infringing either the '112 or the '275 patent, which products were manufactured by Emine for Belkin.  Belkin lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations contained in Paragraph 16.

17. Answering Paragraph 17 of the *Complaint*, Belkin is informed and believes that the Emine products ATEN accuses of infringing the '112 patent in this action were the same or substantially the same products found not to infringe the '112 patent in International Trade Commission Investigation 337-TA-589, and Belkin therefore denies the allegations as to such Emine products.  Belkin further denies the allegations in Paragraph 17 to the extent the allegations refer to any Emine products accused of infringing either the '112 or the '275 patent, which products were manufactured by Emine for Belkin.  Belkin lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations contained in Paragraph 17.

18. Answering Paragraph 18 of the *Complaint*, Belkin is informed and believes that the Emine products ATEN accuses of infringing the '112 patent in this action were the same or substantially the same products found not to infringe the '112 patent in International Trade Commission Investigation 337-TA-589, and Belkin therefore denies the allegations as to such Emine products. Belkin further denies the allegations in Paragraph 18 to the extent the allegations refer to any Emine products accused of infringing either the '112 or the '275 patent, which products were manufactured by Emine for Belkin. Belkin also denies that anything set forth in the claims of the '112 and '275 patents is inventive. Belkin lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations contained in Paragraph 18.

19. Belkin denies each and every allegation contained in Paragraph 19 of the *Complaint*.

20. Belkin denies each and every allegation contained in Paragraph 20 of the *Complaint*.

21. Belkin denies each and every allegation contained in Paragraph 21 of the *Complaint*.

### ATEN'S CLAIM 1

22. Belkin incorporates its answers to Paragraphs 1-3, 5-7 and 11-18 of the *Complaint* as though fully and completely set forth herein.

23. Belkin lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 23 of the *Complaint*.

24. Answering Paragraph 24 of the *Complaint*, Belkin is informed and believes that the Emine products ATEN accuses of infringing the '112 patent in this action were the same or substantially the same products found not to infringe the '112 patent in International Trade Commission Investigation 337-TA-589, and Belkin therefore denies the allegations as to such Emine products. Belkin further

1  denies the allegations in Paragraph 24 to the extent the allegations refer to any
2  Emine products accused of infringing the '112 patent, which products were
3  manufactured by Emine for Belkin.  Belkin lacks knowledge or information
4  sufficient to form a belief about the truth of any remaining allegations contained in
5  Paragraph 24.

6       25.  Answering Paragraph 25 of the *Complaint*, Belkin is informed and
7  believes that the Emine products ATEN accuses of infringing the '112 patent in this
8  action were the same or substantially the same products found not to infringe the
9  '112 patent in International Trade Commission Investigation 337-TA-589, and
10  Belkin therefore denies the allegations as to such Emine products.  Belkin further
11  denies the allegations in Paragraph 25 to the extent the allegations refer to any
12  Emine products accused of infringing the '112 patent, which products were
13  manufactured by Emine for Belkin.  Belkin lacks knowledge or information
14  sufficient to form a belief about the truth of any remaining allegations contained in
15  Paragraph 25.

16       26.  Answering Paragraph 26 of the *Complaint*, Belkin is informed and
17  believes that the Emine products ATEN accuses of infringing the '112 patent in this
18  action were the same or substantially the same products found not to infringe the
19  '112 patent in International Trade Commission Investigation 337-TA-589, and
20  Belkin therefore denies the allegations as to such Emine products.  Belkin further
21  denies the allegations in Paragraph 26 to the extent the allegations refer to any
22  Emine products accused of infringing the '112 patent, which products were
23  manufactured by Emine for Belkin.  Belkin also denies that anything set forth in the
24  claims of the '112 patent  is inventive.  Belkin lacks knowledge or information
25  sufficient to form a belief about the truth of any remaining allegations contained in
26  Paragraph 26.

27
28

## ATEN'S CLAIM 2

27.     Belkin incorporates the answers to Paragraphs 1-3, 5-7 and 11-18 of the *Complaint* as though fully and completely set forth herein.

28.     Answering Paragraph 28 of the *Complaint*, Belkin is informed and believes that the Emine products ATEN accuses of infringing the '112 patent in this action were the same or substantially the same products found not to infringe the '112 patent in International Trade Commission Investigation 337-TA-589, and Belkin therefore admits, on information and belief, that at least as of the filing date of the *Complaint* Emine would have been aware of the '112 patent. Belkin lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations in Paragraph 28 of the *Complaint*.

29.     Answering Paragraph 29 of the *Complaint*, Belkin is informed and believes that the Emine products ATEN accuses of infringing the '112 patent in this action were the same or substantially the same products found not to infringe the '112 patent in International Trade Commission Investigation 337-TA-589, and Belkin therefore denies the allegations as to such Emine products. Belkin further denies the allegations in Paragraph 29 to the extent the allegations refer to any Emine products accused of infringing the '112 patent, which products were manufactured by Emine for Belkin. Belkin lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations contained in Paragraph 29.

30.     Answering Paragraph 30 of the *Complaint*, Belkin is informed and believes that the Emine products ATEN accuses of infringing the '112 patent in this action were the same or substantially the same products found not to infringe the '112 patent in International Trade Commission Investigation 337-TA-589, and Belkin therefore denies the allegations as to such Emine products. Belkin further denies the allegations in Paragraph 30 to the extent the allegations refer to any Emine products accused of infringing the '112 patent, which products were

manufactured by Emine for Belkin.  Belkin lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations contained in Paragraph 30.

### ATEN'S CLAIM 3

31.   Belkin incorporates the answers to Paragraphs 1-3, 5-7 and 11-18 of the *Complaint* as though fully and completely set forth herein.

32.   Belkin lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 32 of the *Complaint*.

33.   Answering Paragraph 33 of the *Complaint*, Belkin denies the allegations to the extent the allegations refer to any Emine products accused of infringing the '275 patent, which products were manufactured by Emine for Belkin. Belkin lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations contained in Paragraph 33.

34.   Answering Paragraph 34 of the *Complaint*, Belkin denies the allegations to the extent the allegations refer to any Emine products accused of infringing the '275 patent, which products were manufactured by Emine for Belkin. Belkin lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations contained in Paragraph 34.

35.   Answering Paragraph 35 of the *Complaint*, Belkin denies the allegations to the extent the allegations refer to any Emine products accused of infringing the '275 patent, which products were manufactured by Emine for Belkin. Belkin also denies that anything set forth in the claims of the '275 patent is inventive.  Belkin lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations contained in Paragraph 35.

### ATEN'S CLAIM 4

36.   Belkin incorporates the answers to Paragraphs 1-3, 5-7 and 11-18 of the *Complaint* as though fully and completely set forth herein.

37.     Belkin lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 37 of the *Complaint*.

38.     Answering Paragraph 38 of the *Complaint*, Belkin denies the allegations to the extent the allegations refer to any Emine products accused of infringing the '275 patent, which products were manufactured by Emine for Belkin. Belkin lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations contained in Paragraph 38.

39.     Answering Paragraph 39 of the *Complaint*, Belkin denies the allegations to the extent the allegations refer to any Emine products accused of infringing the '275 patent, which products were manufactured by Emine for Belkin. Belkin lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations contained in Paragraph 39.

## **ATEN'S CLAIM 5**

40.     Belkin incorporates the answers to Paragraphs 1-21 of the *Complaint* as though fully and completely set forth herein.

41.     Belkin lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 41 of the *Complaint*.

42.     Answering Paragraph 42 of the *Complaint*, Belkin admits that it imports into the United States and sells KVM switch products, including Flip, OmniView, SOHO and PRO3 switches.  Belkin denies each and every remaining allegation contained in Paragraph 42 of the *Complaint*.

43.     Answering Paragraph 43 of the *Complaint*, Belkin admits that it has had actual knowledge of the '112 patent since at least July 21, 2006.

44.     Belkin denies each and every allegation contained in Paragraph 44 of the *Complaint*.

45.     Belkin denies each and every allegation contained in Paragraph 45 of the *Complaint*.

## ATEN'S CLAIM 6

46.     Belkin incorporates the answers to Paragraphs 1-21 of the *Complaint* as though fully and completely set forth herein.

47.     Belkin lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 47 of the *Complaint*.

48.     Answering Paragraph 48 of the *Complaint*, Belkin admits that it imports into the United States and sells KVM switch products, including Flip, OmniView and SOHO switches.   Belkin denies each and every remaining allegation contained in Paragraph 48 of the *Complaint*.

49.     Answering Paragraph 49 of the *Complaint*, Belkin admits that it has had actual knowledge of the '275 patent since at least October 9, 2008.

50.     Belkin denies each and every allegation contained in Paragraph 50 of the *Complaint*.

51.     Belkin denies each and every allegation contained in Paragraph 51 of the *Complaint*.

52.     Belkin denies each and every allegation contained in Paragraph 52 of the *Complaint*.

## ATEN'S CLAIM 7

53.     Belkin incorporates the answers to Paragraphs 1-21 of the *Complaint* as though fully and completely set forth herein.

54.     Answering Paragraph 54 of the *Complaint*, Belkin admits that on its face the '287 patent lists an issue date of October 18, 2005, and is entitled "ASYNCHRONOUS/SYNCHRONOUS KVMP SWITCH FOR CONSOLE AND PERIPHERAL DEVICES."   Belkin also admits that a copy of the '287 patent was attached to the *Complaint* as Exhibit C.   Belkin lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 54 the *Complaint*.

BELKIN'S SUPPLEMENTAL AMENDED ANSWER AND COUNTERCLAIMS
TO SECOND AMENDED AND SUPPLEMENTAL *COMPLAINT*

55.   Answering Paragraph 55 of the *Complaint*, Belkin admits that it imports into the United States and sells KVM switch products, including but not limited to F1DP216G, F1DP232G, F1DD102L, F1DD104L, F1DS102J, F1DS104J, F1DS102L and F1DS104L products.   Belkin denies on information and believe each and every remaining allegation contained in Paragraph 55 of the *Complaint*.

56.   Answering Paragraph 56 of the *Complaint*, Belkin admits that it now has knowledge of the '287 patent.

57.   Belkin denies each and every allegation contained in Paragraph 57 of the *Complaint*.

58.   Belkin denies each and every allegation contained in Paragraph 58 of the *Complaint*.

59.   Belkin denies each and every allegation contained in Paragraph 59 of the *Complaint*.

### ATEN'S CLAIM 8

60.   Belkin incorporates the answers to Paragraphs 1-21 of the *Complaint* as though fully and completely set forth herein.

61.   Answering Paragraph 61 of the *Complaint*, Belkin admits that on its face the '854 patent lists an issue date of November 3, 2009, and is entitled "KEYBOARD VIDEO MOUSE (KVM) SWITCH WHEREIN PERIPHERALS HAVING SOURCE COMMUNICATION PROTOCOL ARE ROUTED VIA KVM SWITCH AND CONVERTED TO DESTINATION COMMUNICATION PROTOCOL."   Belkin also admits that a copy of the '854 patent was attached to the *Complaint* as Exhibit D.   Belkin lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 61 the *Complaint*.

62.   Answering Paragraph 62 of the *Complaint*, Belkin admits that it imports into the United States and sells KVM switch products, including but not

limited to F1DP216A, F1DP232A and F1DW216C products.  Belkin denies on information and belief each and every remaining allegation contained in Paragraph 62 of the *Complaint*.

63.   Answering Paragraph 63 of the *Complaint*, Belkin admits that it now has knowledge of the '854 patent.

64.   Belkin denies each and every allegation contained in Paragraph 64 of the *Complaint*.

65.   Belkin denies each and every allegation contained in Paragraph 65 of the *Complaint*.

66.   Belkin denies each and every allegation contained in Paragraph 66 of the *Complaint*.

## ATEN'S CLAIM 9

67.   Belkin incorporates the answers to Paragraphs 1-21 of the *Complaint* as though fully and completely set forth herein.

68.   Answering Paragraph 68 of the *Complaint*, Belkin admits that on its face the '299 patent lists an issue date of June 2, 2009, and is entitled "KEYBOARD, VIDEO AND MOUSE (KVM) SWITCH."   Belkin also admits that a copy of the '299 patent was attached to the *Complaint* as Exhibit E.  Belkin lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 68 the *Complaint*.

69.   Answering Paragraph 69 of the *Complaint*, Belkin admits that it imports into the United States and sells KVM switch products, including but not limited to Flip, OmniView, SOHO and PRO3 switches.   Belkin denies on information and belief each and every remaining allegation contained in Paragraph 69 of the *Complaint*.

70.   Answering Paragraph 70 of the *Complaint*, Belkin admits that it now has knowledge of the '299 patent.

BELKIN'S SUPPLEMENTAL AMENDED ANSWER AND COUNTERCLAIMS
TO SECOND AMENDED AND SUPPLEMENTAL *COMPLAINT*

71.   Belkin denies each and every allegation contained in Paragraph 71 of the *Complaint*.

72.   Belkin denies each and every allegation contained in Paragraph 72 of the *Complaint*.

73.   Belkin denies each and every allegation contained in Paragraph 73 of the *Complaint*.

## BELKIN'S AFFIRMATIVE DEFENSES

For separate and affirmative defenses, Belkin alleges as follows:

74.   Belkin incorporates here the foregoing admissions, denials, and allegations in Paragraphs 1-73 above.

## FIRST AFFIRMATIVE DEFENSE

75.   On information and belief, the claims of the '112, '275, '287, '854 and '299 patents are invalid for failing to comply with one or more requirements of the patent laws of the United States, including, but not limited to, the conditions for patentability set forth in 35 U.S.C. §§101, 102, 103 and 112.

## SECOND AFFIRMATIVE DEFENSE

76.   On information and belief, Belkin has not infringed, and is not infringing, and has not contributed to or induced, and is not contributing to or inducing, the infringement of the claims of the '112, '275, '287, '854 and '299 patents.

## THIRD AFFIRMATIVE DEFENSE

77.   On information and belief, ATEN is estopped by representations or actions taken during the prosecution of the '112, '275, '287, '854 and '299 patents, which representations and/or actions limit the literal and equivalent scope of the claims of those patents under the doctrines of prosecution disclaimer and prosecution history estoppel.

## FOURTH AFFIRMATIVE DEFENSE

78.    On information and belief, ATEN's claim for damages, if any, is limited by 35 U.S.C. §287.

## FIFTH AFFIRMATIVE DEFENSE

79.    On information and belief, ATEN is barred in whole or in part from asserting the '275 and '287 patents against Belkin, under the doctrine of laches, or waiver, or both.

## SIXTH AFFIRMATIVE DEFENSE

80.    On information and belief, the '112 patent is unenforceable by reason of inequitable conduct committed during the prosecution of the patent before the United States Patent and Trademark Office ("PTO"). While the scope of such inequitable conduct is not now known in its entirety and with precision, such conduct includes the deliberate withholding of material information from the PTO as described below.

81.    On or about July 8, 2002, the law firm of Jeffer, Mangels, Butler & Mamaro LLP filed U.S. Patent Application No. 10/190,015 (hereinafter "the '112 patent application"), entitled "AUTOMATIC SWITCH" on behalf of Kevin Chen. The '112 patent states on its face that it issued on April 25, 2006 and was assigned to ATEN International Co., Ltd.  On information and belief, Mr. Chen was the Chief Executive Officer of ATEN International Co., Ltd. at the time the '112 patent application was filed and throughout the prosecution thereof.

82.    At all relevant times during the prosecution of the '112 patent application, ATEN International Co., Ltd., Mr. Chen and/or the attorneys and agents acting on their behalf had an uncompromising duty of candor to the PTO, which included the duty to pay appropriate fees to the PTO, the duty to disclose relevant facts to the PTO, including prior art known to ATEN International Co., Ltd., Mr. Chen and/or the attorneys and agents acting on their behalf, and the duty

1   not to make material misrepresentations of fact to the PTO with respect to the '112

2   patent application.

3        83.   On information and belief, ATEN International Co., Ltd., Mr. Chen

4   and/or the attorneys and agents acting on their behalf failed to pay appropriate fees

5   to the PTO, on occasion paying "small entity" fees even though it was known to

6   them that ATEN International Co., Ltd., as the assignee of the '112 patent

7   application, did not qualify as a "small entity" and therefore should have been

8   paying "large entity" fees. On information and belief, the failure to pay correct fees

9   was willful, amounting to inequitable conduct sufficient to render the '112 patent

10   unenforceable.

11        84.   On information and belief, ATEN International Co., Ltd., Mr. Chen

12   and/or the attorneys and agents acting on their behalf failed to disclose prior art to

13   the PTO that they knew, or, in view of surrounding facts and circumstances, they

14   should have known to be more relevant than the prior art made of record during the

15   prosecution of the '112 patent application. This prior art includes, but is not limited

16   to, certain of ATEN International Co., Ltd.'s own KVM switch and cable products

17   and related product literature which constituted prior art as to the '112 patent

18   application.

19        85.   In the now-completed United States International Trade Commission

20   Investigation No. 337-TA-589, *In the Matter of CERTAIN SWITCHES AND*

21   *PRODUCTS CONTAINING SAME* ("the ITC Investigation"), which ATEN

22   International Co., Ltd. initiated against several respondents, including Belkin (and

23   its predecessor companies), and in this action and its predecessor actions, ATEN

24   International Co., Ltd. has taken the position that the asserted claims of the '112

25   patent are sufficiently broad so as to be infringed by KVM switches having cables

26   attached to the bodies of the switches by thumbscrews.

27        86.   The prior art products of ATEN International Co., Ltd., such as the

28   commercially-marketed CS-12, CS-142, CS-228, CS-428 CS-1004, CS-1008 and

CS-1016 products, comprise KVM switches that had cables (such as the 2L-1001 and 2L-1701P type KVM cables) attached to the bodies of the switches by thumbscrews.  Associated prior art product literature likewise disclosed such switches.  This prior art is discussed in detail in the briefing submitted in the ITC Investigation, in the ITC Administrative Law Judge's Preliminary Determination, and in the International Trade Commission's Decision, and is also discussed in detail in Belkin's Preliminary Invalidity Contentions in predecessor Case No. SACV 09-00843-AG (MLGx).

87.    In the ITC Investigation, both the Administrative Law Judge and the International Trade Commission on review found that if the asserted claims of the '112 patent were construed as broadly as ATEN International Co., Ltd. there argued, the asserted claims would have been invalid over various prior art, including ATEN International Co., Ltd.'s own prior art products and literature identified in Paragraph 86 above.  These prior art ATEN products and literature were therefore both non-cumulative and highly material to the '112 patent application. The Examiner handling the '112 patent application would have wanted to know about the prior art ATEN products and literature before deciding whether to allow the claims of the '112 patent.

88.    After years of rejections on a host of grounds, in a February 25, 2005 Office Action the Examiner again rejected Claim 4 (which would eventually issue as Claim 1) of the '112 patent, along with other claims.  In response, ATEN International Co., Ltd., Mr. Chen and the attorneys and agents acting on their behalf submitted an Amendment to the '112 patent application on May 25, 2005, which Amendment added a new limitation to Claim 4 (issued as Claim 1) directed to "having a plurality of connector plugs, wherein each connector plug in the plurality of connector plugs for one of the cables in the plurality of cables are matched a respective connector plug in another one of the cables in the plurality of cables." ATEN International Co., Ltd., Mr. Chen and the attorneys and agents acting on

BELKIN'S SUPPLEMENTAL AMENDED ANSWER AND COUNTERCLAIMS
TO SECOND AMENDED AND SUPPLEMENTAL *COMPLAINT*

1   their behalf then asked the Examiner to "withdraw . . . the rejection based on the
2   amendments." However, the prior art ATEN cables, such as the 2L-1701P 3-in-1
3   KVM cable sold by ATEN International Co., Ltd., fell within the scope of this
4   amendment, and was therefore both non-cumulative and highly material to the '112
5   patent application. The Examiner handling the '112 patent application would have
6   wanted to know about the prior art ATEN 2L-1701P 3-in-1 KVM cable before
7   deciding whether to allow Claim 4 (now Claim 1) of the application.

8      89.   Third-party prior art products, for example, the StarTech SV211K
9   KVM switch and cables, the Linksys ProConnect KVM switch and cables, and the
10   Avocent Outlook ES Series KVM switch and cables, also incorporate KVM
11   switches that have cables attached to the switch bodies by thumbscrews.   Given
12   ATEN International Co., Ltd.'s proposed claim constructions and allegations of
13   infringement, these other prior art products and their associated literature
14   incorporate features falling within the scope of the '112 claims asserted by ATEN
15   against Belkin, and are therefore material, non-cumulative and more relevant to the
16   patentability of the claims of the '112 patent than the prior art cited by or to the
17   PTO during the prosecution of the '112 patent application.   The Examiner handling
18   the '112 patent application would have wanted to know about this third-party prior
19   art before deciding whether to allow the claims of the '112 patent.

20      90.   ATEN International Co., Ltd., Mr. Chen and the attorneys and agents
21   acting on their behalf during the prosecution of the '112 patent application
22   indisputably knew of ATEN's own prior art KVM switches and cables and related
23   literature described in Paragraphs 86 and 88 above, and knew these ATEN KVM
24   switches and cables and related literature were highly material.   On information and
25   belief, ATEN International Co., Ltd., Mr. Chen and the attorneys and agents acting
26   on their behalf during the prosecution of the '112 patent application further knew
27   about the third-party prior art switches and cables and related literature described in
28   Paragraph 89 above, and knew these third-party KVM switches and cables and

- 17 -

1  related literature were highly material.  Nevertheless, ATEN International Co., Ltd.,
2  Mr. Chen and/or the attorneys and agents acting on their behalf during the
3  prosecution of the '112 patent application elected not to disclose any of this prior
4  art to the PTO, and in fact withheld this prior art from the PTO, during the
5  prosecution of the '112 patent.

6       91.    Indeed, during the prosecution of the '112 patent application, ATEN
7  International Co., Ltd., Mr. Chen and the attorneys and agents acting on their behalf
8  filed a Petition to Make Special, in which they represented to the PTO that they had
9  undertaken a rigorous search for prior art, and had disclosed the most relevant prior
10 art of which they were aware.  None of the ATEN prior art products and literature
11 identified in Paragraphs 86 and 88 above, and none of the and third-party prior art
12 products and literature identified in Paragraph 89 above, were disclosed in this
13 Petition to Make Special, even though ATEN International Co., Ltd., Mr. Chen and
14 the attorneys and agents acting on their behalf had knowledge of these prior art
15 products and literature.

16      92.    Although the Administrative Law Judge in the ITC Investigation did
17 not find the '112 patent unenforceable, Belkin is informed and believes that the
18 failure on the part of ATEN International Co., Ltd., Mr. Chen and/or the attorneys
19 and agents acting on their behalf to disclose pertinent prior art meets the "intent"
20 standard for patent unenforceability, especially when coupled with the clear
21 materiality of the withheld prior art.  Despite indisputable knowledge that the
22 ATEN and third-party prior art products and literature identified in Paragraphs 86,
23 88 and 89 above disclosed allegedly novel limitations attributed to the '112 claims,
24 ATEN International Co., Ltd., Mr. Chen and the attorneys and agents acting on
25 their behalf withheld those prior art products and literature from the PTO, in order
26 to secure allowance of the claims.  This is strong circumstantial evidence that the
27 withholding on the part of ATEN International Co., Ltd., Mr. Chen and the
28 attorneys and agents acting on their behalf was intentional.

93.     Additional evidence to be discovered in this action and adduced at trial, including, on information and belief, documents and testimony regarding a variety of ATEN products that were sold prior to July 8, 2001, containing various of the switch components disclosed and claimed in the '112 patent, will further convincingly establish that the failure on the part of ATEN International Co., Ltd., Mr. Chen and/or the attorneys and agents acting on their behalf to disclose the more relevant prior art, some of which consisted of ATEN's own prior art products and literature, was intentional.

94.     On information and belief, ATEN International Co., Ltd., Mr. Chen and/or the attorneys and agents acting on their behalf thus fully intended to deceive and mislead the PTO into issuing the '112 patent.  This intentional deception in withholding prior art, when viewed in the context of the highly material nature of the withheld prior art, constitutes inequitable conduct and renders the '112 patent unenforceable.

## SEVENTH AFFIRMATIVE DEFENSE

95.     On information and belief, the '275 patent is unenforceable by reason of inequitable conduct committed during the prosecution of the patent before the PTO.  While the scope of such inequitable conduct is not now known in its entirety and with precision, such conduct includes the deliberate withholding of material information from the PTO described below.

96.     On or about February 28, 2000, the law firm of Bacon & Thomas, PLLC filed U.S. Patent Application No. 09/514,579 (hereinafter "the '275 patent application"), entitled "AN ELECTRONIC SWITCHING DEVICE FOR A UNIVERSAL SERIAL BUS INTERFACE," on behalf of Sun Chung Chen.  The '275 patent states on its face that it issued on May 13, 2003 and was assigned to ATEN International Co., Ltd.  The '275 patent asserts priority from a Taiwanese patent application filed May 28, 1999.  On information and belief, Mr. Chen was

1   the Chief Executive Officer of ATEN International Co., Ltd. at the time the '275

2   patent application was filed and throughout the prosecution thereof.

3       97.    ATEN International Co., Ltd., Mr. Chen and/or their attorneys and

4   agents failed to disclose material prior art and material information in connection

5   with the prosecution of the '275 patent application.  This failure to disclose was a

6   violation of Mr. Chen's, ATEN International Co., Ltd.'s and/or their attorneys'

7   duties of candor and good faith. 37 C.F.R. §1.56.  On information and belief, this

8   omission was done with the intent to deceive or mislead the PTO.

9       98.    When the '275 patent application was filed, it contained fourteen

10  claims, one of which was independent and thirteen of which were dependent (either

11  directly or indirectly) on Claim 1. These fourteen claims are recited below:

12          1.    An electronic switching device for a universal
            serial bus (USB) interface, comprising a trigger signal
13          generator, a control signal generator, and a connector,
            wherein:
14
                the trigger signal generator having an output to be
15          connected with an input of the control signal generator,
            and having a switch to output a trigger signal to the
16          control signal generator when a user enables the switch;

17              the control signal generator having an input to be
            connected with an output of the trigger signal generator,
18          and having an output to be connected with an input of the
            connector, for receiving the trigger signal outputted from
19          the trigger signal generator, and processing the trigger
            signal, then outputting a control signal to the connector;
20
                the connector having an input to be connected with
21          each universal serial bus (USB interface of at least two
            electronic devices, and having an output to be connected
22          with a universal serial bus (USB( interface of another
            electronic device, when the connector receives the control
23          signal outputted from the control signal generator, the
            connector will connect related universal serial bus (USB)
24          interfaces according to the control signal.

25          2.    An electronic switching device for a universal
            serial bus (USB) interface according to claim 1, wherein
26          the trigger signal generator comprising a resistor, a
            capacitor, and a switch, the resistor and the capacitor are
27          serially connected between a power supply and a ground,
            one end of the switch is connected to the ground, the other
28          end of the switch is connected to where the resistor and

BELKIN'S SUPPLEMENTAL AMENDED ANSWER AND COUNTERCLAIMS
                     TO SECOND AMENDED AND SUPPLEMENTAL *COMPLAINT*

the capacitor are connected, enabling the switch to generate a pulse signal to be used as the trigger signal.

3.    An electronic switching device for a universal serial bus (USB) interface according to claim 1, wherein the control signal generator comprising a D FLIP-FLOP, having a clock signal input terminal to be used as the input of the control signal generator, and having a reverse data output terminal to be connected with a data input terminal thereof, a positive data output terminal thereof is used as the output of the control signal generator.

4.    An electronic switching device for a universal serial bus (USB) interface according to claim 1, wherein the connector comprising a multiplexor, an input and an output of the multiplexor are connected respectively with each universal serial bus (USB) interface of different electronic devices, and a selecting signal input terminal thereof is connected with the output of the control signal generator.

5.    An electronic switching device for a universal serial bus (USB) interface according to claim 1, wherein the control signal generator comprising at least two D FLIP-FLOP's, a clock signal input terminal of the first D FLIP-FLOP is connected with the output of the trigger signal generator, while a reverse data output terminal is connected with its data input terminal; a clock signal input terminal of the second D FLIP-FLOP is connected with the reverse data output terminal of the first D FLIP-FLOP, while a reverse data output terminal of the second D FLIP-FLOP is connected with its data input terminal and so on; and the positive data output terminals of all the D FLIP-FLOP's are used as the control signals for the connector.

6.    An electronic switching device for a universal serial bus (USB) interface according to claim 1, wherein the connector comprising at least two identical multiplexors to be parallely connected for decreasing the internal resistance in the connector.

7.    An electronic switching device for a universal serial bus (USB) interface according to claim 1, wherein a delay signal generator is provided between the trigger signal generator and the connector, having an input to be connected with the output of the trigger signal generator, and having an output to be connected with tan enable terminal of the connector.

8.    An electronic switching device for a universal serial bus (USB) interface according to claim 7, wherein the delay signal generator comprising two resistors, a capacitor and a diode, having its input to be connected with the output of the trigger signal generator, and having

its output to be connected with the enable terminal of the connector, the first resistor and the capacitor are serially connected between a power supply and a ground, a point where the first resistor and the capacitor are connected is connected with a positive terminal of the diode and the enable terminal of the connector, while a negative terminal of the diode is connected with one end of the second resistor, the other end of the second resistor is the input terminal of the delay signal generator

9. An electronic switching device for a universal serial bus (USB) interface according to claim 1, wherein the control signal generator is connected with a display for showing the current connections of the universal serial bus (USB) interfaces.

10.   An electronic switching device for a universal serial bus (USB) interface according to claim 9, wherein the display comprising light emitting diodes.

11.   An electronic switching device for a universal serial bus (USB) interface according to claim 1, wherein the control signal generator is connected with an enable signal generator so that the connections between different USB interfaces are the same whenever the power supply begins conducting.

12.   An electronic switching device for a universal serial bus (USB) interface according to claim 11, wherein the enable signal generator comprising a resistor and a capacitor, the resistor and the capacitor are serially connected between the power supply and the ground, a point where the resistor and the capacitor are connected is used as an output to be connected with a reset terminal of the control signal generator.

13.   An electronic switching device for a universal serial bus (USB) interface according to claim 1, wherein the power supply used by the electronic switching device for a universal serial bus (USB) interface is the power supply used by the connected universal serial bus (USB) interface

14.   An electronic switching device for a universal serial bus (USB) interface according to claim 1, wherein a diode is connected between the power supply and each USB interface to avoid the reverse current flowing from USB interface to the power supply

99.    On September 4, 2002, during prosecution of the '275 patent application, the Examiner working for the PTO issued an Office Action rejecting Claims 1, 9-11, 13 and 14 under 35 U.S.C. §103 as being unpatentable over the

BELKIN'S SUPPLEMENTAL AMENDED ANSWER AND COUNTERCLAIMS
TO SECOND AMENDED AND SUPPLEMENTAL *COMPLAINT*

combination of U.S. Patent No. 6,118,496 ("Ho") in view of U.S. Patent No. 6,012,103 ("Sartore"). In the September 4, 2002 Office Action, the Examiner stated that Ho taught every limitation of Claim 1 as filed except for the recited USB interfaces. The Examiner stated that it would have been obvious to one of ordinary skill in the art at the time of the invention to combine Sartore, which taught USB interfaces, with the switching apparatus taught in Ho to arrive at the structure recited in Claim 1.

100. In the same September 4, 2002 Office Action, the Examiner objected to Claims 2-8 and 12 but indicated Claims 2-8 and 12 "would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims." By so doing, the Examiner was indicating that he was not able to find in the prior art the structure of the "trigger signal generator" recited in original Claim 2. Similarly, this objection meant that the Examiner was not able to find in the prior art the structure of the "connector" recited in original Claim 4. Finally, the objection meant that the Examiner was not able to find in the prior art the structure for the "enable signal generator" recited in original Claim 12.

101. In response to this Office Action, ATEN International Co., Ltd. and Sun Chung Chen, through their attorneys and agents, did not attempt to argue that the Examiner's rejection under 35 U.S.C. §103 was incorrect. Instead, ATEN International Co., Ltd., Mr. Chen and their attorneys and agents acquiesced in the Examiner's rejection, and sought to overcome the objection by rewriting Claims 2-8 and 12 in independent form. The differences between the certain claims as filed and what eventually issued is printed below, with the additions to claims underlined and the deletions shown as being stricken through.

102. The differences between the issued form of Claim 1 of the '275 patent and the corresponding claim as filed are as follows:

> Issued Claim 1 (filed as Claim 1) An electronic switching device for a universal serial bus (USB) interface,

BELKIN'S SUPPLEMENTAL AMENDED ANSWER AND COUNTERCLAIMS
TO SECOND AMENDED AND SUPPLEMENTAL *COMPLAINT*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

comprising a trigger signal generator, a control signal generator, and a connector, wherein:

the trigger signal generator ~~having~~ has an output to be connected with an input of the control signal generator, and a switch to output a trigger signal to the control signal generator when a user enables the switch;

the trigger signal generator comprises a resistor, a capacitor, and a switch, the resistor and the capacitor being serially connected between a power supply and a ground one end of the switch being connected to the ground, and the other end of the switch being connected to where the resistor and the capacitor are connected, such that when a user enables the switch, the switch will generate a pulse signal to be used as a trigger signal for outputting to the control signal generator;

the control signal generator ~~having~~ has an input to be connected with an output of the trigger signal generator, and ~~having~~ an ~~ouput~~ output to be connected with an input of the connector, for receiving the trigger signal outputted from the trigger signal generator, ~~and~~ processing the trigger signal, and then outputting a control signal to the connector; and

the connector ~~having~~ has an input to be connected with each universal serial bus (USB) interface of at least two electronic devices, and ~~having~~ an output to be connected with a universal serial bus (USB) interface of another electronic device, such that when the connector receives the control signal outputted from the control signal generator, the connector will connect related universal serial bus (USB) interfaces according to the control signal.

As can be seen, Claim 1 of the '275 patent was allowed by the Examiner because it recited the structure for the claimed "trigger signal generator," namely a specific arrangement of a switch, resistor and capacitor.

103. The differences between the issued form of Claim 3 of the '275 patent and the corresponding claim as filed are as follows:

Issued Claim 3 (filed as Claim 4) An electronic switching device for a universal serial bus (USB) interface ~~according to claim 1~~, comprising a trigger signal generator, a control signal generator, and a connector, wherein:

the trigger signal generator has an output to be connected with an input of the control signal generator,

- 24 -