1   Robert W. Dickerson (State Bar No. 89367)
    dickersonr@dicksteinshapiro.com
2   Yasser M. El-Gamal (State Bar No. 189047)
    elgamaly@dicksteinshapiro.com
3   DICKSTEIN SHAPIRO LLP
    2049 Century Park East, Suite 700
4   Los Angeles, CA 90067
    Telephone: +1-310-772-8300
5   Facsimile: +1-310-772-8301

6   Attorneys for Defendants and Counterclaimants
    BELKIN INTERNATIONAL, INC. AND BELKIN, INC.

7

8

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11                        SOUTHERN DIVISION

12

13   ATEN INTERNATIONAL CO., LTD.          Case No. SACV 09-00843-AG (MLGx)
     and ATEN TECHNOLOGY, INC.,
14                                         **BELKIN INTERNATIONAL, INC.
                Plaintiffs,                AND BELKIN, INC.'S SECOND
15                                         SUPPLEMENTAL AMENDED
          v.                               ANSWER AND COUNTERCLAIMS
16                                         RE: PLAINTIFFS' SECOND
     EMINE TECHNOLOGY CO., LTD.,           AMENDED AND SUPPLEMENTAL
17   BELKIN INTERNATIONAL, INC.,           COMPLAINT**
     and BELKIN, INC.,
18
                Defendants.
19                                         Honorable Andrew J. Guilford

20   Consolidated with:

21   ATEN INTERNATIONAL CO.,
     LTD., et al.
22                                         Date Transferred:    July 22, 2009
                Plaintiff,                 Discovery Cutoff:    March 8, 2011
23                                         Pretrial Conference: October 18, 2011
          v.                               Trial Date:          November 1, 2011
24
     BELKIN INTERNATIONAL,
25   INC., et al,

                Defendant.
26   AND RELATED COUNTERCLAIMS

27

28

                                      BELKIN'S 2ND SUPP. & AMENDED ANSWER & COUNTERCLAIMS TO 2ND
                                                     AMENDED AND SUPPLEMENTAL COMPLAINT

1   Defendants Belkin International, Inc. and Belkin, Inc. (collectively "Belkin")

2   amend their *Supplemental Amended Answer and Counterclaims* to the *Second*

3   *Amended And Supplemental Complaint* ("*Complaint*") of plaintiffs ATEN

4   International Co., Ltd. and ATEN Technology, Inc. (collectively "ATEN") as

5   follows:

6   **PARTIES**

7   1.      Answering Paragraph 1 of the *Complaint*, Belkin denies ATEN's

8   allegation that ATEN possesses innovative technology, or that any of ATEN's

9   patents are directed to innovations.  Belkin admits that ATEN International Co.,

10  Ltd. is listed as the assignee on U.S. Patent No. 6,564,275 ("the '275 patent"), U.S.

11  Patent No. 6,957,287 ("the '287 patent"), U.S. Patent No. 7,035,112 ("the '112

12  patent"), U.S. Patent No. 7,542,299 ("the '299 patent") and U.S. Patent No.

13  7,613,854 ("the '854 patent").  Belkin lacks knowledge or information sufficient to

14  form a belief about the truth of the remaining allegations contained in Paragraph 1.

15  2.      Answering Paragraph 2 of the *Complaint*, Belkin lacks knowledge or

16  information sufficient to form a belief about the truth of the allegations contained

17  therein.

18  3.      Answering Paragraph 3 of the *Complaint*, Belkin lacks knowledge or

19  information sufficient to form a belief about the truth of the allegations contained

20  therein.  In further response to Paragraph 3, Belkin avers that Emine is not

21  represented by counsel in this matter, and may no longer be a viable legal entity.

22  On information and belief, Emine has not made an appearance in this matter in this

23  Court, such that constructive service of the Complaint upon Emine was not effected

24  under Local Rule 15.3

25  4.      Answering Paragraph 4 of the *Complaint*, Belkin admits that Belkin

26  International, Inc. and Belkin, Inc. are corporations organized under the laws of the

27  state of Delaware.  Belkin admits that it has conducted business and has offered to

28  sell and has sold products to customers and stores in this judicial district and

BELKIN'S 2ND SUPP. & AMENDED ANSWER & COUNTERCLAIMS TO 2ND
AMENDED AND SUPPLEMENTAL COMPLAINT

throughout the State of California.  Except as expressly admitted, Belkin denies any remaining allegations in Paragraph 4.

## JURISDICTION AND VENUE

5.    Answering Paragraph 5 of the *Complaint*, Belkin admits that ATEN has brought a patent infringement action arising under the United States Patent Laws, 35 U.S.C. §100 *et seq*. including 35 U.S.C. §271.

6.    Answering Paragraph 6 of the *Complaint*, Belkin admits that this Court has subject matter jurisdiction over this matter under 28 U.S.C. §§1331 and 1338(a).

7.    Answering Paragraph 7 of the *Complaint*,  Belkin denies on information and belief that it has committed any act of patent infringement with respect to ATEN's patents, in this judicial district or any other judicial district. Belkin admits that it is subject to personal jurisdiction in the Central District of California.  Belkin lacks knowledge or information sufficient to form a belief about the truth of any of the allegations relating to Emine.

8.    Answering Paragraph 8 of the *Complaint*, Belkin denies on information and belief that it has committed any act of patent infringement with respect to ATEN's patents, in this judicial district or any other judicial district. Belkin admits that venue is proper in the Central District of California.

9.    Answering Paragraph 9 of the *Complaint*, Belkin admits that it submitted to the jurisdiction of this Court by virtue of its motion to transfer this action from the Eastern District of Texas to the Central District of California, and that venue is proper in the Central District of California.

10.    Answering Paragraph 10 of the *Complaint*, Belkin denies on information and belief that any of its products infringe any of ATEN's patents. Belkin admits that it has shipped products into the Central District of California, as well as other judicial districts.

BELKIN'S 2ND SUPP. & AMENDED ANSWER & COUNTERCLAIMS TO 2ND AMENDED AND SUPPLEMENTAL COMPLAINT

1

## ATEN'S PATENTS

2       11.      Answering Paragraph 11 of the *Complaint*, Belkin admits that on its

3 face the '112 patent lists an issue date of April 25, 2006, identifies the patentee as

4 Kevin Chen, and is entitled "AUTOMATIC SWITCH."   Belkin lacks knowledge

5 or information sufficient to form a belief about the truth of the remaining

6 allegations of Paragraph 11 of the *Complaint*. Except as expressly admitted above,

7 Belkin denies each and every remaining allegation of Paragraph 11 of the

8 *Complaint*.

9       12.      Answering Paragraph 12 of the *Complaint*, Belkin denies that the '112

10 patent is directed to an invention. Belkin admits that to its knowledge, only two

11 companies have settled litigation brought against them by ATEN, and have taken

12 "licenses" under the '112 patent, but Belkin denies that such litigation settlements

13 constitute either "acknowledgement" or "appreciation" of the so-called "invention

14 in the '112 patent." Belkin also denies all other allegations in Paragraph 12 of the

15 *Complaint*.

16       13.      Answering Paragraph 13 of the *Complaint*, Belkin denies that the '112

17 patent is valid. Belkin admits that to its knowledge RATOC Systems Inc. is one of

18 the two companies who have entered into litigation settlements with ATEN. Belkin

19 lacks knowledge or information sufficient to form a belief about the truth of the

20 remaining allegations contained in Paragraph 13.

21       14.      Answering Paragraph 14 of the *Complaint*, Belkin denies that the '112

22 patent is valid. Belkin admits that to its knowledge JustCom Tech, Inc. is the other

23 of the two companies who have entered into litigation settlements with ATEN.

24 Belkin lacks knowledge or information sufficient to form a belief about the truth of

25 the remaining allegations contained in Paragraph 14.

26       15.      Answering Paragraph 15 of the *Complaint*, Belkin admits that on its

27 face the '275 patent lists an issue date of May 13, 2003, identifies the patentee as

28 Sun Chung Chen, and is entitled "ELECTRONIC SWITCHING DEVICE FOR A

BELKIN'S 2ND SUPP. & AMENDED ANSWER & COUNTERCLAIMS TO 2ND
AMENDED AND SUPPLEMENTAL COMPLAINT

1  UNIVERSAL SERIAL BUS INTERFACE."    Belkin lacks knowledge or
2  information sufficient to form a belief about the truth of the remaining allegations
3  of Paragraph 15 the *Complaint*.

4              **DEFENDANTS' (ALLEGED) ACTS OF INFRINGEMENT**

5         16.    Answering Paragraph 16 of the *Complaint*, Belkin is informed and
6  believes that the Emine products ATEN accuses of infringing the '112 patent in this
7  action were the same or substantially the same products found not to infringe the
8  '112 patent in International Trade Commission Investigation 337-TA-589, and
9  Belkin therefore denies the allegations as to such Emine products. Belkin further
10 denies the allegations in Paragraph 16 to the extent the allegations refer to any
11 Emine products accused of infringing either the '112 or the '275 patent, which
12 products were manufactured by Emine for Belkin. Belkin lacks knowledge or
13 information sufficient to form a belief about the truth of any remaining allegations
14 contained in Paragraph 16.

15        17.    Answering Paragraph 17 of the *Complaint*, Belkin is informed and
16 believes that the Emine products ATEN accuses of infringing the '112 patent in this
17 action were the same or substantially the same products found not to infringe the
18 '112 patent in International Trade Commission Investigation 337-TA-589, and
19 Belkin therefore denies the allegations as to such Emine products. Belkin further
20 denies the allegations in Paragraph 17 to the extent the allegations refer to any
21 Emine products accused of infringing either the '112 or the '275 patent, which
22 products were manufactured by Emine for Belkin. Belkin lacks knowledge or
23 information sufficient to form a belief about the truth of any remaining allegations
24 contained in Paragraph 17.

25        18.    Answering Paragraph 18 of the *Complaint*, Belkin is informed and
26 believes that the Emine products ATEN accuses of infringing the '112 patent in this
27 action were the same or substantially the same products found not to infringe the
28 '112 patent in International Trade Commission Investigation 337-TA-589, and

BELKIN'S 2ND SUPP. & AMENDED ANSWER & COUNTERCLAIMS TO 2ND
                   AMENDED AND SUPPLEMENTAL COMPLAINT

1  Belkin therefore denies the allegations as to such Emine products. Belkin further
2  denies the allegations in Paragraph 18 to the extent the allegations refer to any
3  Emine products accused of infringing either the '112 or the '275 patent, which
4  products were manufactured by Emine for Belkin. Belkin also denies that anything
5  set forth in the claims of the '112 and '275 patents is inventive. Belkin lacks
6  knowledge or information sufficient to form a belief about the truth of any
7  remaining allegations contained in Paragraph 18.

8      19.    Belkin denies each and every allegation contained in Paragraph 19 of
9  the *Complaint*.

10     20.    Belkin denies each and every allegation contained in Paragraph 20 of
11 the *Complaint*.

12     21.    Belkin denies each and every allegation contained in Paragraph 21 of
13 the *Complaint*.

14                          **ATEN'S CLAIM 1**

15     22.    Belkin incorporates its answers to Paragraphs 1-3, 5-7 and 11-18 of the
16 *Complaint* as though fully and completely set forth herein.

17     23.    Belkin lacks knowledge or information sufficient to form a belief
18 about the truth of the allegations in Paragraph 23 of the *Complaint*.

19     24.    Answering Paragraph 24 of the *Complaint*, Belkin is informed and
20 believes that the Emine products ATEN accuses of infringing the '112 patent in this
21 action were the same or substantially the same products found not to infringe the
22 '112 patent in International Trade Commission Investigation 337-TA-589, and
23 Belkin therefore denies the allegations as to such Emine products. Belkin further
24 denies the allegations in Paragraph 24 to the extent the allegations refer to any
25 Emine products accused of infringing the '112 patent, which products were
26 manufactured by Emine for Belkin. Belkin lacks knowledge or information
27 sufficient to form a belief about the truth of any remaining allegations contained in
28 Paragraph 24.

1    25.    Answering Paragraph 25 of the *Complaint*, Belkin is informed and

2  believes that the Emine products ATEN accuses of infringing the '112 patent in this

3  action were the same or substantially the same products found not to infringe the

4  '112 patent in International Trade Commission Investigation 337-TA-589, and

5  Belkin therefore denies the allegations as to such Emine products.  Belkin further

6  denies the allegations in Paragraph 25 to the extent the allegations refer to any

7  Emine products accused of infringing the '112 patent, which products were

8  manufactured by Emine for Belkin.  Belkin lacks knowledge or information

9  sufficient to form a belief about the truth of any remaining allegations contained in

10  Paragraph 25.

11    26.    Answering Paragraph 26 of the *Complaint*, Belkin is informed and

12  believes that the Emine products ATEN accuses of infringing the '112 patent in this

13  action were the same or substantially the same products found not to infringe the

14  '112 patent in International Trade Commission Investigation 337-TA-589, and

15  Belkin therefore denies the allegations as to such Emine products.  Belkin further

16  denies the allegations in Paragraph 26 to the extent the allegations refer to any

17  Emine products accused of infringing the '112 patent, which products were

18  manufactured by Emine for Belkin. Belkin also denies that anything set forth in the

19  claims of the '112 patent  is inventive.  Belkin lacks knowledge or information

20  sufficient to form a belief about the truth of any remaining allegations contained in

21  Paragraph 26.

22                            **ATEN'S CLAIM 2**

23    27.    Belkin incorporates the answers to Paragraphs 1-3, 5-7 and 11-18 of

24  the *Complaint* as though fully and completely set forth herein.

25    28.    Answering Paragraph 28 of the *Complaint*, Belkin is informed and

26  believes that the Emine products ATEN accuses of infringing the '112 patent in this

27  action were the same or substantially the same products found not to infringe the

28  '112 patent in International Trade Commission Investigation 337-TA-589, and

1    Belkin therefore admits, on information and belief, that at least as of the filing date
2    of the *Complaint* Emine would have been aware of the '112 patent.  Belkin lacks
3    knowledge or information sufficient to form a belief about the truth of any
4    remaining allegations in Paragraph 28 of the *Complaint*.

5          29.    Answering Paragraph 29 of the *Complaint*, Belkin is informed and
6    believes that the Emine products ATEN accuses of infringing the '112 patent in this
7    action were the same or substantially the same products found not to infringe the
8    '112 patent in International Trade Commission Investigation 337-TA-589, and
9    Belkin therefore denies the allegations as to such Emine products.  Belkin further
10   denies the allegations in Paragraph 29 to the extent the allegations refer to any
11   Emine products accused of infringing the '112 patent, which products were
12   manufactured by Emine for Belkin.  Belkin lacks knowledge or information
13   sufficient to form a belief about the truth of any remaining allegations contained in
14   Paragraph 29.

15         30.    Answering Paragraph 30 of the *Complaint*, Belkin is informed and
16   believes that the Emine products ATEN accuses of infringing the '112 patent in this
17   action were the same or substantially the same products found not to infringe the
18   '112 patent in International Trade Commission Investigation 337-TA-589, and
19   Belkin therefore denies the allegations as to such Emine products.  Belkin further
20   denies the allegations in Paragraph 30 to the extent the allegations refer to any
21   Emine products accused of infringing the '112 patent, which products were
22   manufactured by Emine for Belkin.  Belkin lacks knowledge or information
23   sufficient to form a belief about the truth of any remaining allegations contained in
24   Paragraph 30.

25                              **ATEN'S CLAIM 3**

26         31.    Belkin incorporates the answers to Paragraphs 1-3, 5-7 and 11-18 of
27   the *Complaint* as though fully and completely set forth herein.

28

BELKIN'S 2ND SUPP. & AMENDED ANSWER & COUNTERCLAIMS TO 2ND
AMENDED AND SUPPLEMENTAL COMPLAINT

32.  Belkin lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 32 of the *Complaint*.

33.  Answering Paragraph 33 of the *Complaint*, Belkin denies the allegations to the extent the allegations refer to any Emine products accused of infringing the '275 patent, which products were manufactured by Emine for Belkin. Belkin lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations contained in Paragraph 33.

34.  Answering Paragraph 34 of the *Complaint*, Belkin denies the allegations to the extent the allegations refer to any Emine products accused of infringing the '275 patent, which products were manufactured by Emine for Belkin. Belkin lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations contained in Paragraph 34.

35.  Answering Paragraph 35 of the *Complaint*, Belkin denies the allegations to the extent the allegations refer to any Emine products accused of infringing the '275 patent, which products were manufactured by Emine for Belkin. Belkin also denies that anything set forth in the claims of the '275 patent is inventive.  Belkin lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations contained in Paragraph 35.

## ATEN'S CLAIM 4

36.  Belkin incorporates the answers to Paragraphs 1-3, 5-7 and 11-18 of the *Complaint* as though fully and completely set forth herein.

37.  Belkin lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 37 of the *Complaint*.

38.  Answering Paragraph 38 of the *Complaint*, Belkin denies the allegations to the extent the allegations refer to any Emine products accused of infringing the '275 patent, which products were manufactured by Emine for Belkin. Belkin lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations contained in Paragraph 38.

BELKIN'S 2ND SUPP. & AMENDED ANSWER & COUNTERCLAIMS TO 2ND
AMENDED AND SUPPLEMENTAL COMPLAINT

39.    Answering Paragraph 39 of the *Complaint*, Belkin denies the allegations to the extent the allegations refer to any Emine products accused of infringing the '275 patent, which products were manufactured by Emine for Belkin. Belkin lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations contained in Paragraph 39.

## ATEN'S CLAIM 5

40.    Belkin incorporates the answers to Paragraphs 1-21 of the *Complaint* as though fully and completely set forth herein.

41.    Belkin lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 41 of the *Complaint*.

42.    Answering Paragraph 42 of the *Complaint*, Belkin admits that it imports into the United States and sells KVM switch products, including Flip, OmniView, SOHO and PRO3 switches. Belkin denies each and every remaining allegation contained in Paragraph 42 of the *Complaint*.

43.    Answering Paragraph 43 of the *Complaint*, Belkin admits that it has had actual knowledge of the '112 patent since at least July 21, 2006.

44.    Belkin denies each and every allegation contained in Paragraph 44 of the *Complaint*.

45.    Belkin denies each and every allegation contained in Paragraph 45 of the *Complaint*.

## ATEN'S CLAIM 6

46.    Belkin incorporates the answers to Paragraphs 1-21 of the *Complaint* as though fully and completely set forth herein.

47.    Belkin lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 47 of the *Complaint*.

48.    Answering Paragraph 48 of the *Complaint*, Belkin admits that it imports into the United States and sells KVM switch products, including Flip,

1    OmniView and SOHO switches.   Belkin denies each and every remaining
2    allegation contained in Paragraph 48 of the *Complaint*.

3        49.   Answering Paragraph 49 of the *Complaint*, Belkin admits that it has
4    had actual knowledge of the '275 patent since at least October 9, 2008.

5        50.   Belkin denies each and every allegation contained in Paragraph 50 of
6    the *Complaint*.

7        51.   Belkin denies each and every allegation contained in Paragraph 51 of
8    the *Complaint*.

9        52.   Belkin denies each and every allegation contained in Paragraph 52 of
10   the *Complaint*.

11                              **ATEN'S CLAIM 7**

12       53.   Belkin incorporates the answers to Paragraphs 1-21 of the *Complaint*
13   as though fully and completely set forth herein.

14       54.   Answering Paragraph 54 of the *Complaint*, Belkin admits that on its
15   face the '287 patent lists an issue date of October 18, 2005, and is entitled
16   "ASYNCHRONOUS/SYNCHRONOUS KVMP SWITCH FOR CONSOLE AND
17   PERIPHERAL DEVICES."  Belkin also admits that a copy of the '287 patent was
18   attached to the *Complaint* as Exhibit C.   Belkin lacks knowledge or information
19   sufficient to form a belief about the truth of the remaining allegations of Paragraph
20   54 the *Complaint*.

21       55.   Answering Paragraph 55 of the *Complaint*, Belkin admits that it
22   imports into the United States and sells KVM switch products, including but not
23   limited to F1DP216G, F1DP232G, F1DD102L, F1DD104L, F1DS102J, F1DS104J,
24   F1DS102L and F1DS104L products.   Belkin denies on information and believe
25   each and every remaining allegation contained in Paragraph 55 of the *Complaint*.

26       56.   Answering Paragraph 56 of the *Complaint*, Belkin admits that it now
27   has knowledge of the '287 patent.

28

BELKIN'S 2ND SUPP. & AMENDED ANSWER & COUNTERCLAIMS TO 2ND
AMENDED AND SUPPLEMENTAL COMPLAINT

1   57.   Belkin denies each and every allegation contained in Paragraph 57 of
2   the *Complaint*.

3   58.   Belkin denies each and every allegation contained in Paragraph 58 of
4   the *Complaint*.

5   59.   Belkin denies each and every allegation contained in Paragraph 59 of
6   the *Complaint*.

7   ### ATEN'S CLAIM 8

8   60.   Belkin incorporates the answers to Paragraphs 1-21 of the *Complaint*
9   as though fully and completely set forth herein.

10  61.   Answering Paragraph 61 of the *Complaint*, Belkin admits that on its
11  face the '854 patent lists an issue date of November 3, 2009, and is entitled
12  "KEYBOARD VIDEO MOUSE (KVM) SWITCH WHEREIN PERIPHERALS
13  HAVING SOURCE COMMUNICATION PROTOCOL ARE ROUTED VIA
14  KVM SWITCH AND CONVERTED TO DESTINATION COMMUNICATION
15  PROTOCOL."   Belkin also admits that a copy of the '854 patent was attached to
16  the *Complaint* as Exhibit D.  Belkin lacks knowledge or information sufficient to
17  form a belief about the truth of the remaining allegations of Paragraph 61 the
18  *Complaint*.

19  62.   Answering Paragraph 62 of the *Complaint*, Belkin admits that it
20  imports into the United States and sells KVM switch products, including but not
21  limited to F1DP216A, F1DP232A and F1DW216C products.  Belkin denies on
22  information and belief each and every remaining allegation contained in Paragraph
23  62 of the *Complaint*.

24  63.   Answering Paragraph 63 of the *Complaint*, Belkin admits that it now
25  has knowledge of the '854 patent.

26  64.   Belkin denies each and every allegation contained in Paragraph 64 of
27  the *Complaint*.

28

BELKIN'S 2ND SUPP. & AMENDED ANSWER & COUNTERCLAIMS TO 2ND
AMENDED AND SUPPLEMENTAL COMPLAINT

65.    Belkin denies each and every allegation contained in Paragraph 65 of the *Complaint*.

66.    Belkin denies each and every allegation contained in Paragraph 66 of the *Complaint*.

## ATEN'S CLAIM 9

67.    Belkin incorporates the answers to Paragraphs 1-21 of the *Complaint* as though fully and completely set forth herein.

68.    Answering Paragraph 68 of the *Complaint*, Belkin admits that on its face the '299 patent lists an issue date of June 2, 2009, and is entitled "KEYBOARD, VIDEO AND MOUSE (KVM) SWITCH."   Belkin also admits that a copy of the '299 patent was attached to the *Complaint* as Exhibit E.  Belkin lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 68 the *Complaint*.

69.    Answering Paragraph 69 of the *Complaint*, Belkin admits that it imports into the United States and sells KVM switch products, including but not limited to Flip, OmniView, SOHO and PRO3 switches.   Belkin denies on information and belief each and every remaining allegation contained in Paragraph 69 of the *Complaint*.

70.    Answering Paragraph 70 of the *Complaint*, Belkin admits that it now has knowledge of the '299 patent.

71.    Belkin denies each and every allegation contained in Paragraph 71 of the *Complaint*.

72.    Belkin denies each and every allegation contained in Paragraph 72 of the *Complaint*.

73.    Belkin denies each and every allegation contained in Paragraph 73 of the *Complaint*.

## BELKIN'S AFFIRMATIVE DEFENSES

For separate and affirmative defenses, Belkin alleges as follows:

74.    Belkin incorporates here the foregoing admissions, denials, and allegations in Paragraphs 1-73 above.

## FIRST AFFIRMATIVE DEFENSE

75.    On information and belief, the claims of the '112, '275, '287, '854 and '299 patents are invalid for failing to comply with one or more requirements of the patent laws of the United States, including, but not limited to, the conditions for patentability set forth in 35 U.S.C. §§101, 102, 103 and 112.

## SECOND AFFIRMATIVE DEFENSE

76.    On information and belief, Belkin has not infringed, and is not infringing, and has not contributed to or induced, and is not contributing to or inducing, the infringement of the claims of the '112, '275, '287, '854 and '299 patents.

## THIRD AFFIRMATIVE DEFENSE

77.    On information and belief, ATEN is estopped by representations or actions taken during the prosecution of the '112, '275, '287, '854 and '299 patents, which representations and/or actions limit the literal and equivalent scope of the claims of those patents under the doctrines of prosecution disclaimer and prosecution history estoppel.

## FOURTH AFFIRMATIVE DEFENSE

78.    On information and belief, ATEN's claim for damages, if any, is limited by 35 U.S.C. §287.

## FIFTH AFFIRMATIVE DEFENSE

79.    On information and belief, ATEN is barred in whole or in part from asserting the '275 and '287 patents against Belkin, under the doctrine of laches, or waiver, or both.

BELKIN'S 2ND SUPP. & AMENDED ANSWER & COUNTERCLAIMS TO 2ND
AMENDED AND SUPPLEMENTAL COMPLAINT

# SIXTH AFFIRMATIVE DEFENSE

80.    On information and belief, the '112 patent is unenforceable by reason of inequitable conduct committed during the prosecution of the patent before the United States Patent and Trademark Office ("PTO"). While the scope of such inequitable conduct is not now known in its entirety and with precision, such conduct includes the deliberate withholding of material information from the PTO as described below.

81.    On or about July 8, 2002, the law firm of Jeffer, Mangels, Butler & Mamaro LLP filed U.S. Patent Application No. 10/190,015 (hereinafter "the '112 patent application"), entitled "AUTOMATIC SWITCH" on behalf of Kevin Chen. The '112 patent states on its face that it issued on April 25, 2006 and was assigned to ATEN International Co., Ltd.  On information and belief, Mr. Chen was the Chief Executive Officer of ATEN International Co., Ltd. at the time the '112 patent application was filed and throughout the prosecution thereof.

82.    At all relevant times during the prosecution of the '112 patent application, ATEN International Co., Ltd., Mr. Chen and/or the attorneys and agents acting on their behalf had an uncompromising duty of candor to the PTO, which included the duty to pay appropriate fees to the PTO, the duty to disclose relevant facts to the PTO, including prior art known to ATEN International Co., Ltd., Mr. Chen and/or the attorneys and agents acting on their behalf, and the duty not to make material misrepresentations of fact to the PTO with respect to the '112 patent application.

83.    On information and belief, ATEN International Co., Ltd., Mr. Chen and/or the attorneys and agents acting on their behalf failed to pay appropriate fees to the PTO, on occasion paying "small entity" fees even though it was known to them that ATEN International Co., Ltd., as the assignee of the '112 patent application, did not qualify as a "small entity" and therefore should have been paying "large entity" fees. On information and belief, the failure to pay correct fees

- 14 -

1   was willful, amounting to inequitable conduct sufficient to render the '112 patent

2   unenforceable.

3       84.    On information and belief, ATEN International Co., Ltd., Mr. Chen

4   and/or the attorneys and agents acting on their behalf failed to disclose prior art to

5   the PTO that they knew, or, in view of surrounding facts and circumstances, they

6   should have known to be more relevant than the prior art made of record during the

7   prosecution of the '112 patent application. This prior art includes, but is not limited

8   to, certain of ATEN International Co., Ltd.'s own KVM switch and cable products

9   and related product literature which constituted prior art as to the '112 patent

10  application.

11      85.    In the now-completed United States International Trade Commission

12  Investigation No. 337-TA-589, *In the Matter of CERTAIN SWITCHES AND*

13  *PRODUCTS CONTAINING SAME* ("the ITC Investigation"), which ATEN

14  International Co., Ltd. initiated against several respondents, including Belkin (and

15  its predecessor companies), and in this action and its predecessor actions, ATEN

16  International Co., Ltd. has taken the position that the asserted claims of the '112

17  patent are sufficiently broad so as to be infringed by KVM switches having cables

18  attached to the bodies of the switches by thumbscrews.

19      86.    The prior art products of ATEN International Co., Ltd., such as the

20  commercially-marketed CS-12, CS-142, CS-228, CS-428 CS-1004, CS-1008 and

21  CS-1016 products, comprise KVM switches that had cables (such as the 2L-1001

22  and 2L-1701P type KVM cables) attached to the bodies of the switches by

23  thumbscrews.  Associated prior art product literature likewise disclosed such

24  switches. This prior art is discussed in detail in the briefing submitted in the ITC

25  Investigation, in the ITC Administrative Law Judge's Preliminary Determination,

26  and in the International Trade Commission's Decision, and is also discussed in

27  detail in Belkin's Preliminary Invalidity Contentions in predecessor Case No.

28  SACV 09-00843-AG (MLGx).

87.     In the ITC Investigation, both the Administrative Law Judge and the International Trade Commission on review found that if the asserted claims of the '112 patent were construed as broadly as ATEN International Co., Ltd. there argued, the asserted claims would have been invalid over various prior art, including ATEN International Co., Ltd.'s own prior art products and literature identified in Paragraph 86 above.  These prior art ATEN products and literature were therefore both non-cumulative and highly material to the '112 patent application.  The Examiner handling the '112 patent application would have wanted to know about the prior art ATEN products and literature before deciding whether to allow the claims of the '112 patent.

88.     After years of rejections on a host of grounds, in a February 25, 2005 Office Action the Examiner again rejected Claim 4 (which would eventually issue as Claim 1) of the '112 patent, along with other claims.  In response, ATEN International Co., Ltd., Mr. Chen and the attorneys and agents acting on their behalf submitted an Amendment to the '112 patent application on May 25, 2005, which Amendment added a new limitation to Claim 4 (issued as Claim 1) directed to "having a plurality of connector plugs, wherein each connector plug in the plurality of connector plugs for one of the cables in the plurality of cables are matched a respective connector plug in another one of the cables in the plurality of cables." ATEN International Co., Ltd., Mr. Chen and the attorneys and agents acting on their behalf then asked the Examiner to "withdraw . . . the rejection based on the amendments."  However, the prior art ATEN cables, such as the 2L-1701P 3-in-1 KVM cable sold by ATEN International Co., Ltd., fell within the scope of this amendment, and was therefore both non-cumulative and highly material to the '112 patent application.  The Examiner handling the '112 patent application would have wanted to know about the prior art ATEN 2L-1701P 3-in-1 KVM cable before deciding whether to allow Claim 4 (now Claim 1) of the application.

1    89.    Third-party prior art products, for example, the StarTech SV211K

2  KVM switch and cables, the Linksys ProConnect KVM switch and cables, and the

3  Avocent Outlook ES Series KVM switch and cables, also incorporate KVM

4  switches that have cables attached to the switch bodies by thumbscrews.  Given

5  ATEN International Co., Ltd.'s proposed claim constructions and allegations of

6  infringement, these other prior art products and their associated literature

7  incorporate features falling within the scope of the '112 claims asserted by ATEN

8  against Belkin, and are therefore material, non-cumulative and more relevant to the

9  patentability of the claims of the '112 patent than the prior art cited by or to the

10  PTO during the prosecution of the '112 patent application.  The Examiner handling

11  the '112 patent application would have wanted to know about this third-party prior

12  art before deciding whether to allow the claims of the '112 patent.

13    90.    ATEN International Co., Ltd., Mr. Chen and the attorneys and agents

14  acting on their behalf during the prosecution of the '112 patent application

15  indisputably knew of ATEN's own prior art KVM switches and cables and related

16  literature described in Paragraphs 86 and 88 above, and knew these ATEN KVM

17  switches and cables and related literature were highly material.  On information and

18  belief, ATEN International Co., Ltd., Mr. Chen and the attorneys and agents acting

19  on their behalf during the prosecution of the '112 patent application further knew

20  about the third-party prior art switches and cables and related literature described in

21  Paragraph 89 above, and knew these third-party KVM switches and cables and

22  related literature were highly material.  Nevertheless, ATEN International Co., Ltd.,

23  Mr. Chen and/or the attorneys and agents acting on their behalf during the

24  prosecution of the '112 patent application elected not to disclose any of this prior

25  art to the PTO, and in fact withheld this prior art from the PTO, during the

26  prosecution of the '112 patent.

27    91.    Indeed, during the prosecution of the '112 patent application, ATEN

28  International Co., Ltd., Mr. Chen and the attorneys and agents acting on their behalf

filed a Petition to Make Special, in which they represented to the PTO that they had undertaken a rigorous search for prior art, and had disclosed the most relevant prior art of which they were aware. None of the ATEN prior art products and literature identified in Paragraphs 86 and 88 above, and none of the and third-party prior art products and literature identified in Paragraph 89 above, were disclosed in this Petition to Make Special, even though ATEN International Co., Ltd., Mr. Chen and the attorneys and agents acting on their behalf had knowledge of these prior art products and literature.

92.     Although the Administrative Law Judge in the ITC Investigation did not find the '112 patent unenforceable, Belkin is informed and believes that the failure on the part of ATEN International Co., Ltd., Mr. Chen and/or the attorneys and agents acting on their behalf to disclose pertinent prior art meets the "intent" standard for patent unenforceability, especially when coupled with the clear materiality of the withheld prior art. Despite indisputable knowledge that the ATEN and third-party prior art products and literature identified in Paragraphs 86, 88 and 89 above disclosed allegedly novel limitations attributed to the '112 claims, ATEN International Co., Ltd., Mr. Chen and the attorneys and agents acting on their behalf withheld those prior art products and literature from the PTO, in order to secure allowance of the claims. This is strong circumstantial evidence that the withholding on the part of ATEN International Co., Ltd., Mr. Chen and the attorneys and agents acting on their behalf was intentional.

93.     Additional evidence to be discovered in this action and adduced at trial, including, on information and belief, documents and testimony regarding a variety of ATEN products that were sold prior to July 8, 2001, containing various of the switch components disclosed and claimed in the '112 patent, will further convincingly establish that the failure on the part of ATEN International Co., Ltd., Mr. Chen and/or the attorneys and agents acting on their behalf to disclose the more

1   relevant prior art, some of which consisted of ATEN's own prior art products and
2   literature, was intentional.

3       94.    On information and belief, ATEN International Co., Ltd., Mr. Chen
4   and/or the attorneys and agents acting on their behalf thus fully intended to deceive
5   and mislead the PTO into issuing the '112 patent.  This intentional deception in
6   withholding prior art, when viewed in the context of the highly material nature of
7   the withheld prior art, constitutes inequitable conduct and renders the '112 patent
8   unenforceable.

9   **SEVENTH AFFIRMATIVE DEFENSE**

10       95.    On information and belief, the '275 patent is unenforceable by reason
11   of inequitable conduct committed during the prosecution of the patent before the
12   PTO.  While the scope of such inequitable conduct is not now known in its entirety
13   and with precision, such conduct includes the deliberate withholding of material
14   information from the PTO described below.

15       96.    On or about February 28, 2000, the law firm of Bacon & Thomas,
16   PLLC filed U.S. Patent Application No. 09/514,579 (hereinafter "the '275 patent
17   application"), entitled "AN ELECTRONIC SWITCHING DEVICE FOR A
18   UNIVERSAL SERIAL BUS INTERFACE," on behalf of Sun Chung Chen.  The
19   '275 patent states on its face that it issued on May 13, 2003 and was assigned to
20   ATEN International Co., Ltd.  The '275 patent asserts priority from a Taiwanese
21   patent application filed May 28, 1999.  On information and belief, Mr. Chen was
22   the Chief Executive Officer of ATEN International Co., Ltd. at the time the '275
23   patent application was filed and throughout the prosecution thereof.

24       97.    ATEN International Co., Ltd., Mr. Chen and/or their attorneys and
25   agents failed to disclose material prior art and material information in connection
26   with the prosecution of the '275 patent application.  This failure to disclose was a
27   violation of Mr. Chen's, ATEN International Co., Ltd.'s and/or their attorneys'
28

BELKIN'S 2ND SUPP. & AMENDED ANSWER & COUNTERCLAIMS TO 2ND
AMENDED AND SUPPLEMENTAL COMPLAINT

1   duties of candor and good faith.  37 C.F.R. §1.56.  On information and belief, this

2   omission was done with the intent to deceive or mislead the PTO.

3        98.    When the '275 patent application was filed, it contained fourteen

4   claims, one of which was independent and thirteen of which were dependent (either

5   directly or indirectly) on Claim 1.  These fourteen claims are recited below:

6         1.    An electronic switching device for a universal
7   serial bus (USB) interface, comprising a trigger signal
    generator, a control signal generator, and a connector,
8   wherein:

9         the trigger signal generator having an output to be
    connected with an input of the control signal generator,
10   and having a switch to output a trigger signal to the
    control signal generator when a user enables the switch;

11        the control signal generator having an input to be
12   connected with an output of the trigger signal generator,
    and having an output to be connected with an input of the
13   connector, for receiving the trigger signal outputted from
    the trigger signal generator, and processing the trigger
14   signal, then outputting a control signal to the connector;

15        the connector having an input to be connected with
    each universal serial bus (USB interface of at least two
16   electronic devices, and having an output to be connected
    with a universal serial bus (USB( interface of another
17   electronic device, when the connector receives the control
    signal outputted from the control signal generator, the
18   connector will connect related universal serial bus (USB)
    interfaces according to the control signal.

19        2.    An electronic switching device for a universal
20   serial bus (USB) interface according to claim 1, wherein
    the trigger signal generator comprising a resistor, a
21   capacitor, and a switch, the resistor and the capacitor are
    serially connected between a power supply and a ground,
22   one end of the switch is connected to the ground, the other
    end of the switch is connected to where the resistor and
23   the capacitor are connected, enabling the switch to
    generate a pulse signal to be used as the trigger signal.

24        3.    An electronic switching device for a universal
25   serial bus (USB) interface according to claim 1, wherein
    the control signal generator comprising a D FLIP-FLOP,
26   having a clock signal input terminal to be used as the
    input of the control signal generator, and having a reverse
27   data output terminal to be connected with a data input
    terminal thereof, a positive data output terminal thereof is
28   used as the output of the control signal generator.

BELKIN'S 2ND SUPP. & AMENDED ANSWER & COUNTERCLAIMS TO 2ND
AMENDED AND SUPPLEMENTAL COMPLAINT

4.    An electronic switching device for a universal serial bus (USB) interface according to claim 1, wherein the connector comprising a multiplexor, an input and an output of the multiplexor are connected respectively with each universal serial bus (USB) interface of different electronic devices, and a selecting signal input terminal thereof is connected with the output of the control signal generator.

5.    An electronic switching device for a universal serial bus (USB) interface according to claim 1, wherein the control signal generator comprising at least two D FLIP-FLOP's, a clock signal input terminal of the first D FLIP-FLOP is connected with the output of the trigger signal generator, while a reverse data output terminal is connected with its data input terminal; a clock signal input terminal of the second D FLIP-FLOP is connected with the reverse data output terminal of the first D FLIP-FLOP, while a reverse data output terminal of the second D FLIP-FLOP is connected with its data input terminal and so on; and the positive data output terminals of all the D FLIP-FLOP's are used as the control signals for the connector.

6.    An electronic switching device for a universal serial bus (USB) interface according to claim 1, wherein the connector comprising at least two identical multiplexors to be parallely connected for decreasing the internal resistance in the connector.

7.    An electronic switching device for a universal serial bus (USB) interface according to claim 1, wherein a delay signal generator is provided between the trigger signal generator and the connector, having an input to be connected with the output of the trigger signal generator, and having an output to be connected with tan enable terminal of the connector.

8.    An electronic switching device for a universal serial bus (USB) interface according to claim 7, wherein the delay signal generator comprising two resistors, a capacitor and a diode, having its input to be connected with the output of the trigger signal generator, and having its output to be connected with the enable terminal of the connector, the first resistor and the capacitor are serially connected between a power supply and a ground, a point where the first resistor and the capacitor are connected is connected with a positive terminal of the diode and the enable terminal of the connector, while a negative terminal of the diode is connected with one end of the second resistor, the other end of the second resistor is the input terminal of the delay signal generator

9. An electronic switching device for a universal serial bus (USB) interface according to claim 1, wherein the

BELKIN'S 2ND SUPP. & AMENDED ANSWER & COUNTERCLAIMS TO 2ND AMENDED AND SUPPLEMENTAL COMPLAINT

control signal generator is connected with a display for showing the current connections of the universal serial bus (USB) interfaces.

10.   An electronic switching device for a universal serial bus (USB) interface according to claim 9, wherein the display comprising light emitting diodes.

11.   An electronic switching device for a universal serial bus (USB) interface according to claim 1, wherein the control signal generator is connected with an enable signal generator so that the connections between different USB interfaces are the same whenever the power supply begins conducting.

12.   An electronic switching device for a universal serial bus (USB) interface according to claim 11, wherein the enable signal generator comprising a resistor and a capacitor, the resistor and the capacitor are serially connected between the power supply and the ground, a point where the resistor and the capacitor are connected is used as an output to be connected with a reset terminal of the control signal generator.

13.   An electronic switching device for a universal serial bus (USB) interface according to claim 1, wherein the power supply used by the electronic switching device for a universal serial bus (USB) interface is the power supply used by the connected universal serial bus (USB) interface

14.   An electronic switching device for a universal serial bus (USB) interface according to claim 1, wherein a diode is connected between the power supply and each USB interface to avoid the reverse current flowing from USB interface to the power supply

99.   On September 4, 2002, during prosecution of the '275 patent application, the Examiner working for the PTO issued an Office Action rejecting Claims 1, 9-11, 13 and 14 under 35 U.S.C. §103 as being unpatentable over the combination of U.S. Patent No. 6,118,496 ("Ho") in view of U.S. Patent No. 6,012,103 ("Sartore").   In the September 4, 2002 Office Action, the Examiner stated that Ho taught every limitation of Claim 1 as filed except for the recited USB interfaces.  The Examiner stated that it would have been obvious to one of ordinary skill in the art at the time of the invention to combine Sartore, which taught USB

1    interfaces, with the switching apparatus taught in Ho to arrive at the structure

2    recited in Claim 1.

3        100.  In the same September 4, 2002 Office Action, the Examiner objected

4    to Claims 2-8 and 12 but indicated Claims 2-8 and 12 "would be allowable if

5    rewritten in independent form including all of the limitations of the base claim and

6    any intervening claims."  By so doing, the Examiner was indicating that he was not

7    able to find in the prior art the structure of the "trigger signal generator" recited in

8    original Claim 2.  Similarly, this objection meant that the Examiner was not able to

9    find in the prior art the structure of the "connector" recited in original Claim 4.

10   Finally, the objection meant that the Examiner was not able to find in the prior art

11   the structure for the "enable signal generator" recited in original Claim 12.

12       101.  In response to this Office Action, ATEN International Co., Ltd. and

13   Sun Chung Chen, through their attorneys and agents, did not attempt to argue that

14   the Examiner's rejection under 35 U.S.C. §103 was incorrect.  Instead, ATEN

15   International Co., Ltd., Mr. Chen and their attorneys and agents acquiesced in the

16   Examiner's rejection, and sought to overcome the objection by rewriting Claims 2-

17   8 and 12 in independent form.  The differences between the certain claims as filed

18   and what eventually issued is printed below, with the additions to claims underlined

19   and the deletions shown as being stricken through.

20       102.  The differences between the issued form of Claim 1 of the '275 patent

21   and the corresponding claim as filed are as follows:

22       Issued Claim 1 (filed as Claim 1)  An electronic switching
         device for a universal serial bus (USB) interface,
23       comprising a trigger signal generator, a control signal
         generator, and a connector, wherein:
24

25       the trigger signal generator ~~having~~ has an output to
         be connected with an input of the control signal generator,
26       and a switch to output a trigger signal to the control signal
         generator when a user enables the switch;

27       the trigger signal generator comprises a resistor, a
         capacitor, and a switch, the resistor and the capacitor
28       being serially connected between a power supply and a

- 23 -

ground one end of the switch being connected to the ground, and the other end of the switch being connected to where the resistor and the capacitor are connected, such that when a user enables the switch, the switch will generate a pulse signal to be used as a trigger signal for outputting to the control signal generator;

the control signal generator ~~having~~ has an input to be connected with an output of the trigger signal generator, and ~~having~~ an ~~ouput~~ output to be connected with an input of the connector, for receiving the trigger signal outputted from the trigger signal generator, ~~and~~ processing the trigger signal, and then outputting a control signal to the connector; and

the connector ~~having~~ has an input to be connected with each universal serial bus (USB) interface of at least two electronic devices, and ~~having~~ an output to be connected with a universal serial bus (USB) interface of another electronic device, such that when the connector receives the control signal outputted from the control signal generator, the connector will connect related universal serial bus (USB) interfaces according to the control signal.

As can be seen, Claim 1 of the '275 patent was allowed by the Examiner because it recited the structure for the claimed "trigger signal generator," namely a specific arrangement of a switch, resistor and capacitor.

103.   The differences between the issued form of Claim 3 of the '275 patent and the corresponding claim as filed are as follows:

Issued Claim 3 (filed as Claim 4) An electronic switching device for a universal serial bus (USB) interface ~~according to claim 1~~, comprising a trigger signal generator, a control signal generator, and a connector, wherein:

the trigger signal generator has an output to be connected with an input of the control signal generator, and a switch to output a trigger signal to the control signal generator when a user enables the switch;

the control signal generator has an input to be connected with an output of the trigger signal generator, and an output to be connected with an input of the connector, for receiving the trigger signal outputted from the trigger signal generator, processing the trigger signal, and then outputting a control signal to the connector; and

the connector has an input to be connected with

BELKIN'S 2ND SUPP. & AMENDED ANSWER & COUNTERCLAIMS TO 2ND AMENDED AND SUPPLEMENTAL COMPLAINT