John P. Schnurer (SBN 185725)
jschnurer@perkinscoie.com
Matthew C. Bernstein (SBN 199240)
mbernstein@perkinscoie.com
Cheng C. Ko (SBN 244630)
jko@perkinscoie.com
Patrick J. McKeever (SBN 268763)
pmckeever@perkiscoie.com
PERKINS COIE LLP
11988 El Camino Real, #200
San Diego, CA 92130-3334
Telephone: 858.720.5700
Facsimile: 858.720.5799

Attorneys for Plaintiffs
ATEN INTERNATIONAL CO., LTD.
and ATEN TECHNOLOGY, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| ATEN INTERNATIONAL CO., LTD. and ATEN TECHNOLOGY, INC., <br><br> Plaintiffs, <br><br> v. <br><br> EMINE TECHNOLOGY CO., LTD., BELKIN INTERNATIONAL, INC., and BELKIN, INC., <br><br> Defendants. | Case No. 8:09-CV-843 AG (MLGx) <br><br> ATEN INTERNATIONAL CO., LTD. AND ATEN TECHNOLOGY, INC.'S CLAIM CONSTRUCTION HEARING PRESENTATION SLIDES <br><br> Date: May 17, 2011 <br> Time: 9:00 a.m. <br> Judge: Hon. Andrew J. Guilford <br> Ctrm: 10D |

1        Attached hereto as Exhibit 1 are the slides Plaintiffs ATEN International Co.,

2    Ltd. and ATEN Technology, Inc. presented at the *Markman* hearing held on

3    May 17, 2011.

4

5    DATED: May 18, 2011          **PERKINS COIE** LLP

6

7              By: */s/ Matthew C. Bernstein*
                    Matthew C. Bernstein, Bar No. 199240

8                   MBernstein@perkinscoie.com

9              Attorneys for Plaintiff
               ATEN INTERNATIONAL CO., LTD., and

10             ATEN TECHNOLOGY, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on May 18, 2011 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

Any other counsel of record will be served by electronic mail.

*/s/ Matthew C. Bernstein*
Matthew C. Bernstein
MBernstein@perkinscoie.com

# EXHIBIT 1



# *ATEN v. Belkin* Markman Hearing
# 5/17/11



# Outline

- Background
  - ATEN
  - Tutorial
- '112 Patent
  - Body Is Not Limited in Claims 1 and 21; It Is Limited in Dependent Claims
  - Parties Agree on Integrated Into / Fixedly Attached
- '287 Patent
  - Claim 1 Requires Synchronous / Asynchronous Switching; Claim 1 Also Requires Switching Without Signal Interruption
  - Claim 1 Is Not Limited to USB: "Hub Switch Module"
  - Parties Mostly Agree on "Emulates"
  - Claim 7 Does Not Require Synchronous Switching and Is Not Limited to USB
  - Claim 7 Structure



# ATEN



- **ATEN Technology**
  - Foothill Ranch, CA
  - Over 75 employees
  - Sales / Marketing / Development of IOGEAR and ATEN branded products

- **ATEN International**
  - **Taiwanese public company**
  - **Over 1000 Employees**
  - **Designs, develops, and manufacturers KVM switches**
    - **3 Factories**
  - **Dozens of KVM patents**



# Why Are We Here?







# What is a KVM Switch?

**K**       **V**       **M**

  

Console Devices

Perkins
Coie

# What is a KVM switch?





# '112 Patent Problems Solved

## 1. Too Many / Confusing Cables (all claims)





# '112 Patent Problems Solved

## 2. Body Characteristics (claims 2-9)





# What is a KVMP Switch?

## P = Peripheral Device (e.g., speakers, printers, scanners, etc.)





# '287 Patent Problem Solved

- Controlling multiple computers and one or more than one peripheral device
- Giving users the option of switching synchronously or asynchronously
- Giving users the ability to switch peripheral devices without losing data



# '112 Patent



# Body

# WHAT IS A BODY?



# Body

- ATEN:  "An **enclosure** having one or more connector port openings and an internal switching circuit."

- Belkin:  "'Body' **does not include** outer walls that are made of metal material or rigid plastic material and assembled together **by means of screws**."



# Claim Language Supports ATEN

- "Body" in independent claims 1 and 21 are not limited in any way

1. A switch comprising:

a body;

a switching circuit contained within the body;

a set of connector ports electrically coupled to the switching circuit; and,

a plurality of cables fixedly attached to and extending from the body, each cable in the plurality of cables having a plurality of connector plugs, wherein each connector plug in the plurality of connector plugs for one of the cables in the plurality of cables are matched a respective connector plug in another one of the cables in the plurality of cables, and wherein the switching circuit switches to connect each of the set of connector ports to one of the plurality of cables.

21. A method comprising the steps of:

providing a body;

enclosing a switching circuit within the body;

integrating a first computer cable and a second computer cable into the body, each of the first computer cable and the second computer cable including a first end electrically coupled to the switching circuit and a second end having a plurality of connector plugs, each connector plug in the plurality of connector plugs in the first computer cable being matched to a corresponding one of the plurality of connector plugs in the second computer cable; and,

providing a plurality of connector ports on a surface of the body, the plurality of connector ports electrically coupled to the switching circuit;

wherein the switching circuit electrically switches the plurality of connector ports between the plurality of connector plugs of the first computer cable and the second computer cable.



# Claim Language Supports ATEN

- But "body" is limited in dependent claims

## CLAIM DIFFERENTIATION

2. The switch of claim **1**, wherein the body includes a circuit-protecting layer surrounding the switching circuit.

3. The switch of claim **2**, wherein the circuit-protecting layer is comprised of a layer of injection-molded plastic.

4. The switch of claim **3**, wherein the layer of injection-molded plastic has a low melting point.

5. The switch of claim **2**, wherein the body includes an outer case surrounding the circuit-protecting layer.

6. The switch of claim **5**, wherein the outer case has a rigid outer surface.

7. The switch of claim **1**, wherein the body includes an anti-slipping layer coating.

8. The switch of claim **7**, wherein the anti-slipping layer coating has a soft outer surface.

9. The switch of claim **1**, wherein the switching circuit includes a circuit board and the body includes a circuit-protecting layer enclosing the circuit board.

Perkins Coie

# Prosecution History Supports ATEN

- ATEN broadened "body" during prosecution

Originally filed claim 1

1. An automatic switch, comprising a main body having connector ports provided thereon, more than one or two sets of cable-connected connectors directly extended from said main body, and a circuit board provided in said main body and electrically connected to said sets of cable-connected connectors via signal cables; and

said main body having an integral enclosure that is formed through three times of injection molding to include a circuit-protecting layer for enclosing said circuit board, an outer case enclosing said circuit-protecting layer, and an anti-slipping layer coating an outer surface of said outer case.



# Prosecution History Supports ATEN

- PTO Examiner agreed with ATEN's view on "body" in '112 patent



Fig. 2

'112 Patent Body

5/21/04 Office Action at 3





# Prosecution History Supports ATEN

- PTO Examiner agreed with ATEN's view on "body" in '112 patent



'112 Patent Body



# Prosecution History Supports ATEN

- PTO Examiner agreed with ATEN's view on "body" in '112 patent



'112 Patent Body

8/17/05 Office Action at 2; 2/25/05 Office Action at 3; 10/20/04 Office Action at 2



# Specification Does NOT Limit Body: NO DISAVOWAL

- **"SCREWS" mentioned ONE TIME in specification**



1X

For people to access two or more computers at the same time, there is developed an automatic switch to enable a user to automatically switch among different signal paths. FIG. 1 shows a conventional automatic switch 40 that is configured into a box 41. The box 41 is internally provided with a circuit board (not shown). Ports 42, 43, and 44 for various types of signal cable connectors are provided on peripheral walls of the box 41. In most cases, the box 41 includes outer walls that are made of metal material or rigid plastic material and assembled together by means of screws (not shown). The automatic switch 40 is normally positioned on a host enclosure of a computer configuration and tends to unexpectedly fall off the host enclosure to result in a damaged circuit board due to vibration. Moreover, when a high humidity exists, moisture in the air tends to attach to the circuit board to cause short circuit. Repair or maintenance of the circuit board is therefore required.



# Specification Does NOT Limit Body: NO DISAVOWAL

- **No criticism of "SCREWS" or the use of screws in the specification**



# Specification Does NOT Limit Body: NO DISAVOWAL

- **Prior art distinguished based on sets of connected (integrated) cables, not screws**

In brief, the automatic switch **10** of the present invention uses the main body **20** having cable-connected connector sets **30** to replace the conventional box-type switch **40**, enabling the switch **10** to be used in a more convenient manner. Moreover, the enclosure of the main body **20** of the automatic switch **10** is integrally formed through multiple times of injection molding to protect circuits provided on the internal circuit board **24**, making the automatic switch **10** safer and more convenient for use.



# Specification Does NOT Limit Body: NO DISAVOWAL

- Disavowal is not the default, and is not something appropriate in this case
  - Claim differentiation trumps weak Belkin language
  - No expression of "manifest exclusion or restriction"
  - Mere "general statements" or mild criticisms of prior art not enough



# Integrated / Integrating Into
# Fixedly Attached

- Parties agree: **Both** terms mean: "formed into a unified whole that is inseparable without dissembling the whole."
  - Terms did **not** have the same meaning in ITC case



# '287 Patent



# Claim 1: (a) Synchronous / Asynchronous Switching; and (b) Switching without Interruption of the Signal

- Claim 1: ". . . wherein the console devices can be switched either synchronously or asynchronously with the one or more than one peripheral device to the same one of the plurality of computer systems or to different ones of the plurality of computer systems, without interruption of the signal to the one or more than one peripheral device."



# Claim 1: (a) Synchronous / Asynchronous Switching; and (b) Switching without Interruption of the Signal

- There are two **<u>separate</u>** claim limitations at issue:

  1. The ability to synchronously or asynchronously switch console devices and peripheral devices; and

  2. The ability to switch without interruption of the signal to the peripheral device(s)



# Claim 1: Claim Language

- Claim language itself supports that there are two **<u>separate</u>** claim limitations:
- "without interruption of the signal to the one or more than one peripheral device" follows a comma
  - It is a separate statement on the requirement of switching
- Claim 7 has the without interruption of data language but no synchronous/asynchronous language



# Claim 1:  Specification

- The specification treats Synchronous / Asynchronous Switching and without Interruption of the Signal as two **different** things
  - Col. 1, ll. 53-60

> What is needed is a KVM switch that is also a peripheral sharing switch, which would allow all the computers connected to the switch to share any USB peripheral devices without interruption of data flow to that peripheral when the switch is changed, and which would switch the KVM channels and peripheral channels to a common computer or to different computers either asynchronously or synchronously.

Two separate things



# Claim 1: Specification

- The specification treats Synchronous / Asynchronous Switching and without Interruption of the Signal as two **different** things
  - Col. 3, ll. 40-44

Just discussing synchronous/asynchronous

> The signal switch can either asynchronously or synchronously switch KVM channels and peripheral channels to a common computer or different computer. In other words, the KVM channels and peripheral channels may be switched together (synchronously) or separately (asynchronously).



# Claim 1:  Specification

- In the '287 specification, asynchronous switching is the only switching shown to be done without interruption of the signal to the peripheral
    - Col. 3, l. 60 – Col. 4, l. 11 (describing asynchronous switching in Figure 1)
    - Col. 4. ll. 29 – 35 (describing asynchronous switching in Figure 2)



# Claim 1: The Inventors

- Kevin Chen and Sampson Yang both testified that only asynchronous switching resulted in no loss of data to the peripheral
  - 3/4/11 Chen Tr. at 365:7-10
  - 1/25/11 Yang Tr. at 61:7-62:16



# Claim 1:  The File History

- ATEN amended claim 1 to specifically point out that synchronous and asynchronous switching is one thing, and switching without interruption of the signal to the peripheral is another

**AMENDMENT TO CLAIMS**

As explained in the Description, a problem with current KVM switches is that if a USB peripheral, such as a printer, is connected to the KVM switch, data flow is interrupted to that peripheral when the switch is changed.  (¶ 0003)  The present invention meets this need by providing a KVM switch which can switch the KVM channels and peripheral channels (i) to a common computer or to different computers either asynchronously or synchronously and (ii) without interruption of data flow to that peripheral when the switch is changed.  (¶ 0007)

4/6/05 Amendment, at 6-7



# Claim 1:  The File History

- ATEN amended claim 1 to specifically point out that synchronous and asynchronous switching is one thing, and switching without interruption of the signal to the peripheral is another

> The Description of the present invention explains that the console devices can be switched either synchronously or asynchronously with the one or more than one peripheral device to the same one of the plurality of computer systems or to different ones of the plurality of computer systems:

> The Description of the present invention also explains that the console devices can be switched without interruption of the signal to the one or more than one peripheral device:

4/6/05 Amendment, at 7


Perkins Coie

# Claim 1:  The File History

- ATEN's statements during prosecution do not require that synchronous switching be without interruption of the signal to the peripheral device



# Claim 1:  The File History

- Prior art Thomas did not have "peripherals"
- Prior art Dickens did not disclose "synchronous" switching—it was a router / network
- Prior art Dickens and Thomas did not disclose a switch that could: (1) switch peripherals and KVM either synchronously and asynchronously; and also (2) allow switching without interruption of the signal to the peripheral
- At most, passing statement **by way of example only** of a synchronous switch without data interruption
  - Does not mean synchronous switch without data interruption always required

Dickens et al. do not allow the user to switch the peripherals synchronously with the console devices; rather they remain connected to a "network" and the host computers contend for the channel to the peripheral independent of the console device connections. Therefore, Dickens et al., neither alone nor in combination with Thomas et al., teach or fairly suggest switching the console devices either synchronously or asynchronously with one or more peripheral devices to the same one of a plurality of computer systems, or to different ones of the plurality of computer systems, without interruption of the signal to the one or more peripheral devices."

4/6/05 Amendment, at 15



# Claim 1: Hub Switch Module



# Claim 1: Hub Switch Module

- ATEN: "Bridge between one or more peripheral devices and one or more computers"
  - ATEN's construction comes directly from the specification

> The USB hub switch module **32** is a bridge between peripheral devices **20** and computer systems **12** and allows the signal switch **10** to connect each of a plurality of computer systems to one or more than one peripheral device. Construction of a circuit suitable as a USB hub switch module is well known in the art with reference to this disclosure. In one preferred embodiment, the USB hub switch module includes 4 USB hubs and matrix analog switches which are controlled by CPU firmware. Texas Instruments(r) manufactures USB Hub chips that are suitable for this module, and the module can be constructed using Application Specific Integrated Circuit (ASIC) design methodology.

Col. 5, ll. 1-4; *see also* Col. 4, ll. 53-67


Perkins Coie

# Claim 1: Hub Switch Module

- Belkin improperly attempts to limit Hub Switch Module (and the entire '287 patent) to USB
- Belkin improperly attempts to read further restrictions into its construction

Belkin's Construction

A collection of USB hubs and one or more switches that switch USB signals from the computer systems' USB busses to the USB peripheral devices, and for passing the signals from the emulated console devices from the device control module through the USB hubs to the computer systems.



# Claim 1: Hub Switch Module

- In the specification, ATEN unequivocally stated the claims were **NOT** limited to USB

> Although an embodiment is described with reference to the current HID specification, it will be apparent to those skilled in the art with reference to this disclosure that the invention may be implemented with any specification for device interfacing.

Col. 3, ll. 55-59



# Claim 1: Hub Switch Module

- Belkin improperly attempts to read embodiments from certain claims into **ALL** claims
    - Claims 1 and 7 say nothing about USB (or Belkin's other added limitations)
    - Reading USB into all claims because it is discussed in an embodiment is contrary to law
        - As are Belkin's other additional claim limitations
        - *Golight*; *Brookhill-Wilk 1*
    - Belkin improperly attempts to add functional language to an apparatus claim
        - "and for passing the signals from the emulated console devices from the device control module through the USB hubs to the computer systems"



# Claim 1: Emulates Origination from a Computer



# Claim 1: Emulates Origination from a Computer

- Parties are **mostly** in agreement
- Belkin's construction: "The signal passing from the hub switch module to the peripheral device imitates the signal originating from the connected computer system ~~and is generated by a computer program built into the CPU~~"



# Claim 1: Emulates Origination from a Computer

- No support for: "and is generated by a computer program built into the CPU"
  - Claim language itself contains no such restriction
  - Inappropriate to read a single embodiment into **all** claims



# Claim 7: No Synchronous Switching Requirement

- Belkin improperly attempts to read synchronous (and asynchronous) switching into claim 7
  - "synchronous" and "asynchronous" words not found in claim 7, and only asynchronous switching is described
    - When construing function in means plus function claims, must look at what is explicitly recited in the claims
      - *Omega Eng'g*
  - No disclaimer during prosecution



# Claim 7 Structure

- ATEN:
  1. The combination of a KVM switch and peripheral sharing switch; or
  2. The combination of a hub switch module, a device control module, and a CPU



# Claim 7 Structure

- ATEN:
  - The combination of a KVM switch and peripheral sharing switch

The present invention is directed to a signal switch for sharing one or more than one video monitor, keyboard, mouse and peripheral device. The signal switch of the present invention is the combination of a KVM (keyboard video mouse) switch and a peripheral sharing switch. KVM switches are well known in the art with reference to this disclosure. The signal switch according to the present invention allows all computers connected to the switch to share all USB peripheral devices connected to the switch.

Col. 3, ll. 33-35



# Claim 7 Structure

- ATEN:
  - The combination of a hub switch module, a device control module, and a CPU
    - The <u>hub switch module</u> is a bridge that connects the peripheral devices and computers systems and also enables the switching of console devices (Col. 5, ll.1-4, 14-26)
    - The <u>device control module</u> emulates signals from the console devices for the connected computers, allowing the actual console devices to be switched (Col. 5:16-26)
    - The <u>CPU</u> emulates signals from the host computers which are sent to the peripheral devices through the hub switch module (Col. 3, ll. 50-54; Col. 7:40-45)



# Claim 7 Structure

- Belkin agrees that a hub switch module, a device control module, and a CPU make up the structure of claim 7
  - But Belkin adds further limitations
    - A host control module
    - Firmware executing in the CPU
    - Only applies to USB
    - Unnecessary / inappropriate constructions for its proposed construed structure



# Claim 7 Structure

- Belkin's proposed host control module
  - Belkin says the host control module is necessary to establish the first and third channels between console devices and computers
    - No support for this statement
    - Irrelevant anyway, as the host control module does not perform the switching function, it is merely enabling the switching
      - *Asyst Techs.*



# Claim 7 Structure

- Neither firmware nor algorithms are required
    - When more than a general purpose computer or processor is disclosed, neither firmware nor algorithms are necessary
        - *Gemstar-TV Guide Int'l, Stanacard*
    - **<u>Both</u>** parties agree that more than a CPU is disclosed (i.e., hub switch module and device control module)



# Claim 7 Structure

- Claim 7 is not limited to USB
  - In the specification, ATEN unequivocally stated the claims were **<u>NOT</u>** limited to USB (Col. 3, ll. 55-59)
- 35 U.S.C. § 112(6) states the claim "shall be construed to cover the corresponding structure, material, or acts described in the specification **<u>and equivalents thereof</u>**."

